## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOE GANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| DONALD MARK EHART and | ) | |
| SPREAD EAGLE, INC., a Delaware | ) | |
| Corporation formerly known as Red | ) | |
| Eagle Avionics, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff, Joe Gano, by and through his attorneys, Fox Rothschild LLP, files the following Complaint against Defendants, Donald Mark Ehart and Spread Eagle, Inc., and in support thereof avers as follows:

### Parties

1.    Plaintiff, Joe Gano (hereinafter "Plaintiff" or "Gano"), is a resident of the State of Nevada residing at 4332 Amberwood Road, Reno, Nevada 89519.

2.    Defendant, Donald Mark Ehart (hereinafter "Ehart"), is a resident of the State of Delaware residing at 795 Union Church Road, Townsend, Delaware 19734.

3.    Defendant, Spread Eagle, Inc., formerly known as Red Eagle Avionics, Inc., (hereinafter the "Corporation"), is a Delaware Corporation with a current address of 795 Union Church Road, Townsend, Delaware 19734.  After January 3, 2006, Red Eagle Avionics, Inc. changed its name to Spread Eagle, Inc.  For several years prior to January 3, 2006, the Corporation engaged in the business of aircraft avionics sales and service at 1 Dales Way, New

Castle, Delaware 19720 under the name Red Eagle Avionics, Inc.

    4.    Ehart is the sole officer and stockholder of the Corporation.

## Jurisdiction and Venue

    5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

    6.    Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district.

## Facts

    7.    David Cannavo (hereinafter "Cannavo"), who resides at 1270 Caldwell Corner Road, Townsend, Delaware 19734, is the sole member of Red Eagle Avionics, LLC (hereinafter, the "LLC"), a Delaware Limited Liability Company organized on December 28, 2005, with its place of business at 1 Dale's Way, New Castle, Delaware 19720. Since January 3, 2006, the LLC has engaged in the business of aircraft avionics sales and service.

    8.    Gano and Cannavo are long time associates arising out of aircraft activities and aircraft business dealings.

    9.    Gano and Ehart are long time acquaintances arising out of Ehart's association with Cannavo, as well as aircraft activities and aircraft business dealings.

    10.    In late August or early September, 2005, Ehart desired to sell the Red Eagle Avionics business by selling the stock of the Corporation.

    11.    In late August or early September 2005, Ehart contacted Cannavo and Gano and commenced discussions concerning Cannavo and Gano's purchase of the stock of the Corporation.

12.     Early in the discussions, Ehart personally presented both Gano and Cannavo with a Statement of Operations of Red Eagle Avionics, Inc. for the six months ended June 30, 2005, stating "Net Income From Operations" in the amount of $115,496.00 for the six months ended June 30, 2005.  (A true and correct copy of the aforementioned Statement of Operations is attached hereto as **Exhibit A.**)

13.     On information and belief, the Statement of Operations for the Corporation for the six months ending June 30, 2005 was prepared by the accountant for the Corporation and Ehart at that time, Brousseau & Brousseau, P.A. ("the Accountant"), 5708 Limestone Road, Wilmington, Delaware 19808.

14.     Between September 2005 and December 2005, Gano (or Gano through Cannavo at times) and Cannavo asked Ehart on four occasions about the results of operations of Red Eagle Avionics, Inc. during the period after June 30, 2005.  On each occasion, Ehart stated to Gano and Cannavo that the net income from operations during the second half of 2005 for the Corporation was equal to the first half of 2005 as shown on the Statement of Operations of Red Eagle Avionics, Inc. for the six months ended June 30, 2005 (**Exhibit A**), or a little better than that.

15.     During the same time period between September 2005 and December 2005, and based upon representations directly made to Gano by Ehart, including, without limitation, the information set forth in **Exhibit A**, Gano, in his individual capacity and as a bridge loan to the LLC, agreed to provide the sum of One Million One Hundred Thousand Dollars ($1,100,000.00) in the form of a "wire transaction" (the "Wire Amount") directly to Dave Roeberg, Esquire, acting as counsel for both parties, on January 3, 2006 (the "Settlement Date").  The HUD Settlement Statement is attached hereto as **Exhibit H.**

16.    Of the $1,100,000.00 Wire Amount, Ehart was to receive $1,000,000.00 in immediately available funds, a portion of which Ehart would apply to existing loans and mortgages.

17.    Of the $1,100,000.00 Wire Amount, Cannavo and the LLC were to receive $74,660.00 for initial operating expenses.

18.    On the Settlement Date, because of income tax and other legal reasons, instead of Ehart selling the business by selling the stock in the Corporation, a transaction was agreed to by the parties, and concluded whereby the Corporation and Ehart sold to the LLC, for the price of $2,200,000.00, the business assets used in the operation of the Corporation, but not the Corporation's cash, cash equivalents or liabilities, pursuant to an Agreement for Sale of Business Assets (hereinafter "Agreement"). (A true and correct copy of the aforementioned Agreement is attached hereto as **Exhibit B.**)

19.    On the Settlement Date, Gano, as agreed to and based upon the multiple representations of Defendants and what Gano was led to believe were direct and accurate representations from the Accountant, wired $1,100,000.00 in immediately available funds.

20.    On the Settlement Date, Ehart received the agreed-upon $1,000,000.00 in immediately available funds which, after Ehart applied such amount to reductions, per **Exhibit H**, left Ehart with $523,422.23 in immediately available funds.

21.    In the several months following the Settlement Date, Cannavo and the LLC ran the business with the same operations originally represented by Defendants in the Corporation's Statement of Operations. (**Exhibit A**). However, in the several months of operations following the Settlement Date, Cannavo and the LLC discovered that the net income from operations

4

received from the business was far less than that represented by Ehart and stated on the Corporation's Statement of Operations. Cannavo communicated such discoveries to Gano.

22.    Cannavo, with Gano's knowledge and input, began to investigate the reasons for the discrepancy between the net income from operations actually received in the months following the Settlement Date and the "Net Income From Operations" stated on the Corporation's Statement of Operations, and reviewed information found on computers that had been used by Ehart and the Corporation prior to the sale of those assets prior to the Settlement Date. At that time, Cannavo discovered a large discrepancy between the Corporation's actual bank deposits and the income as stated on the Corporation's Statement of Operations (**Exhibit A**).

23.    Upon further investigation, employees who previously worked for Defendants informed Cannavo that the Corporation had realized income of only approximately $50,000.00 per year.

24.    Continuing in his investigation, Cannavo contacted the Accountant who prepared the Corporation's Statement of Operations (**Exhibit A**).

25.    The Accountant informed Cannavo that he had produced and drafted the Corporation's Statement of Operations at Defendants' request but had placed an extensive disclaimer as the front page of the document.

26.    Ehart never provided the disclaimer, mentioned by the Accountant to Gano, as the bridge loan lender or to Dave Cannavo prior to the January 3, 2006 Settlement Date. On the contrary, Gano, and Cannavo had been advised by Ehart that the numbers expressed on the Corporation's Statement of Operations were valid, true and accurate representations of the

5

financial state of the Corporation as investigated and determined by the Accountant.

27.    In early February, 2006, the Accountant provided Cannavo with a Statement of Operations of Red Eagle Avionics, Inc. for the year ended December 31, 2005, which stated Net Income From Operations for the year ended December 31, 2005 of $52,664.00.  (A true and correct copy of the Net Income from Operations for the year ended December 31, 2005, is attached hereto as **Exhibit C**.)

28.    The Statement of Operations of Red Eagle Avionics, Inc. for the six months ending June 30, 2005, which Ehart initially presented to Gano (**Exhibit A**), and the Statement of Operations of Red Eagle Avionics, Inc. for the year ended December 31, 2005 (**Exhibit C**), together state that Red Eagle Avionics, Inc. lost $62,832.00 during the six months ended December 31, 2005, instead of experiencing net income from operations of approximately $115,496.00, the same amount for the six months ended June 30, 2005, as represented by Ehart.

29.    In late February or early March 2006, Cannavo, with Gano's knowledge, reviewed the Corporation's books and records for the six months ended June 30, 2005, and discovered that cash receipts (sales) for the six month period ended June 30, 2005, was approximately $90,000.00 less than $663,452.00 in sales as shown on the Statement of Operations of Red Eagle Avionics, Inc. for the six months ended June 30, 2005.

30.    The Corporation's hangar, from which the Corporation conducted its business prior to the sale, located at the New Castle County Airport, and included in the sale, was erected on land owned or controlled by the Delaware River and Bay Authority ("DRBA").  Prior to January 3, 2006, said land was leased by DRBA to the Corporation pursuant to a Lease Agreement between the Corporation and the DRBA.  As part of the sale of the hangar by the

6

Corporation to the LLC, the Corporation, with the consent of DRBA, on January 3, 2006 assigned its land lease to the LLC pursuant to an Assignment of Lease Agreement and Transfer of Ownership of Improvements.   (A true and correct copy of the Assignment of Lease Agreement and Transfer of Ownership of Improvements is attached hereto as **Exhibit D.**)

31.    The Agreement also provided for, inter alia: (1) the Corporation and Ehart to physically maintain the Corporation's books and records at the business premises for two years, with the LLC having the right of access and the right to copy any such business records;  (2) representations by Ehart and the Corporation that all of their business records are in all material respects complete and correct; and (3) the Corporation to immediately cease using the name "Red Eagle Avionics" and to cause its corporate name to be changed, enabling the LLC to use the name "Red Eagle Avionics" in the LLC's operation of the Red Eagle Avionics business.

32.    On January 3, 2006, Ehart and the Corporation also executed a Non-Competition Agreement for a period of ten (10) years.   (A true and correct copy of the Non-Competition Agreement is attached hereto as **Exhibit E.**)

33.    One Million Dollars ($1,000,000.00) of the $2,200,000.00 purchase price was paid by the LLC to the Corporation at the January 3, 2006 closing.  One Million Two Hundred Thousand Dollars ($1,200,000.00), the balance of the purchase price, was payable over a twenty year period with interest at 8.5 percent per annum, in equal monthly installments of $10,413.88.

34.    To secure payment of the aforesaid $1,200,000.00, at the January 3, 2006 closing the LLC (i) executed a Mortgage and Security Agreement in favor of the Corporation, granting a first mortgage lien on the hangar recorded in the New Castle County Recorder of Deeds (a copy of the Mortgage and Security Agreement, Recorder's Receipt and UCC-1 Financing Statements

are attached hereto as **Exhibit F**), and (ii) executed and delivered to the Corporation a Promissory Note in the amount of $1,200,000.00 in accordance with the terms set forth in the Agreement, dated January 3, 2006, guaranteed by Mr. Cannavo (a copy of the Promissory Note is attached hereto as **Exhibit G.**)

## COUNT I

### *Fraud*

35.    Plaintiff incorporates herein by reference the averments contained in the preceding paragraphs as though the same were fully set forth at length herein.

36.    In late August or early September 2005, Ehart exhibited and provided to Gano a copy of the Statement of Operations of the Corporation for the six months ended June 30, 2005 (**Exhibit A**).

37.    The Statement of Operations of Red Eagle Avionics, Inc. for the six months ended June 30, 2005 (**Exhibit A**) stated a Net Income From Operations for the Corporation's business of $115,496.00 for the six months ended June 30, 2005.

38.    The Statement of Operations for the six months ended June 30, 2005 (**Exhibit A**), and the representations by Ehart concerning same, overstated the Corporation's actual Net Income From Operations for that period of time by approximately $90,000.00.

39.    In addition, on four occasions between September 2005 and December 2005, Gano and Cannavo asked Ehart about the results of the Corporation's operations during the second half of 2005.  On each occasion, Ehart told and otherwise represented to Cannavo and Gano that the Corporation's business was earning the same Net Income From Operations as the

8

first six months of 2005 as shown on Statement of Operations of the Corporation for the six months ended June 30, 2005 (**Exhibit A**), $115,496.00, or a little better.

40.     During the last six months of 2005, the Corporation was not generating Net Income From Operations of $115,496.00. On the contrary, the Corporation was experiencing a net loss from operations during the last six months of 2005 in the amount of $62,832.00 by the end of such period.

41.     Ehart on each occasion intentionally, knowingly and materially misrepresented to Gano and Cannavo the Net Income From Operations of the Corporation during the last six months of 2005.

42.     In making the aforementioned misrepresentations, Ehart knew and intended that Gano and Cannavo would rely on them.

43.     In making the bridge loan to the LLC and transferring the Wire Amount of $1,100,000.00, $1,000,000.00 of which went directly to Defendants and their benefit, Gano justifiably relied upon Ehart's material misrepresentations that the Corporation generated Net Income From Operations of $115,496.00 for the six months ended June 30, 2005 and approximately the same amount during the last six months of 2005, for a total of approximately $230,000.00 for calendar year 2005.

44.     If Gano had been aware that the Corporation's Net Income From Operations for the six months ended June 30, 2005 was approximately $90,000.00 less than the amount shown on the Statement of Operations (**Exhibit A**), $115,496.00, and as represented by Ehart, Gano would not have made the bridge loan of $1,100,000.00 to the LLC in connection with the January 3, 2006 purchase.

9

45.    If Gano had been aware that the Corporation's Net Income From Operations for the year ended December 31, 2005 was $52,664.00 (as shown on **Exhibit C**), instead of approximately $230,000.00 as represented by Ehart, Gano would not have made the bridge loan of $1,100,000.00 to the LLC in connection with the January 3, 2006 purchase.

46.    If Gano had been aware that Red Eagle Avionics, Inc. sustained a loss from operations of $62,832.00 during the six months ended December 31, 2005, instead of generating Net Income From Operations of approximately $115,000.00 for that period as represented by Ehart, Gano would not have made the bridge loan of $1,100,000.00 to the LLC in connection with the January 3, 2006 purchase.

47.    If Gano had been aware that the Corporation's Net Income From Operations for the calendar year 2005 was only $52,664.00 (as shown on **Exhibit C**), instead of approximately $230,000.00, Gano would not have made the bridge loan of $1,100,000.00 to the LLC in connection with the January 3, 2006 purchase.

48.    The LLC, Cannavo and Gano stand ready, able and willing to redeliver possession of the Corporation's business assets, together with any net income from operations earned by the LLC since January 3, 2006, to Defendants as part of a complete and full rescission of the January 3, 2006 sale.

49.    As a result of Ehart's misrepresentations, which were made both in his individual capacity and as a representative of the Corporation, Gano has suffered harm which cannot be adequately compensated by money damages alone.

## COUNT II

### *Mutual Mistake*

50.    Plaintiff incorporates herein by reference the averments contained in the preceding paragraphs as though the same were fully set forth at length herein.

51.    When the LLC purchased the Corporation's business assets on January 3, 2006, Ehart, the Corporation, Gano, Cannavo and the LLC, were mistaken as to the following facts:

        a.    They understood that the amount of the Corporation's Net Income From Operations for calendar year 2005 was approximately $230,000.00.  However, the actual amount of the Corporation's Net Income From Operations for that period was only $52,664.00;

        b.    They understood that the Corporation's Net Income From Operations for the six months ended June 30, 2005 was $115,496.00.  However, sales were overstated on that statement by approximately $90,000.00, resulting in a reduction of Net Income From Operations in the same amount.

        c.    They understood that the Corporation's Net Income From Operations for the six months ended December 31, 2005 was at least approximately $115,000.00.  However, the Corporation sustained a loss for that period of $62,832.00.

52.    The aforesaid mistakes were material.

53.    If Plaintiff and Defendants on January 3, 2006 were aware of the actual facts as stated above and not mistaken, Plaintiff would not have entered into the January 3, 2006 purchase of the Corporation's business assets.

54. Plaintiff, the LLC and Cannavo stand ready, able, and willing, and hereby offer to redeliver possession of the Corporation's business assets, together with any net income from operations earned by the LLC since January 3, 2006, to Defendants as part of a complete and full rescission of the January 3, 2006 sale.

55. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff, Joe Gano, prays for the following relief:

A. The Court rescind the sale and purchase of the Red Eagle Avionics, Inc. business assets on January 3, 2006 pursuant to the Agreement, the Promissory Note, the Mortgage and Security Agreement, the Non-Competition Agreement, and the Assignment of Lease Agreement and Transfer of Ownership of Improvements;

B. The Court declare that the Agreement, the Promissory Note, the Mortgage and Security Agreement, the Non-Competition Agreement, and the Assignment of Lease Agreement and Transfer of Ownership of Improvements are null and void;

C. The Court order Defendants to repay to Plaintiff the amount paid at closing, $1,100,000.00;

D. The Court order Defendants to repay to Plaintiff $52,069.40 paid on the Promissory Note through June, 2006;

E. The Court order that in exchange for Plaintiff's receipt from Defendants of the amount paid to the Corporation at the January 3, 2006 closing, $1,100,000.00, and $52,069.40 paid by the LLC on the Promissory Note, Plaintiff delivers to Defendants the Red Eagle Avionics Inc. business assets purchased from Defendants;

12

F.      The Court order such other or additional relief necessary and appropriate to effect a complete rescission of the January 3, 2006 sale and purchase of the Red Eagle Avionics Inc. business assets and restore the parties to the status quo immediately prior to the January 3, 2006 sale and purchase;

G.      The Court order Defendants to pay Plaintiff's reasonable attorneys' fees and costs.

**FOX ROTHSCHILD LLP**

By:                

Sophia Siddiqui, Esquire (DE I.D. No. 4914)
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
(302) 654-7444
(302) 656-8920 (facsimile)

and

Wendy G. Rothstein, Esquire (PA I.D. No 37178)
Joshua M. Hummel, Esquire (PA I.D. No. 84635)
1250 South Broad Street
P.O. Box 431
Lansdale, PA 19446-0431
(215) 699-6000
(215) 699-0231 (facsimile)

and

**NURICK LAW GROUP**

Todd B. Nurick, Esquire (PA I.D. No. 78847)
111 West Germantown Pike
Plymouth Meeting, PA 19462
(610) 238-9000
(610) 238-9977 (facsimile)

Date: May 18, 2007

13

# EXHIBIT "A"

RED EAGLE AVIONICS, INC.
STATEMENT OF OPERATIONS
FOR THE SIX MONTHS ENDED JUNE 30, 2005

| | | |
|---|---:|---:|
| SALES | | $ 663,452 |
| | | |
| COST OF SALES | | |
| Materials | $ 352,400 | |
| Freight | 3,028 | |
| Subcontract | 14,490 | |
| | | |
| TOTAL COST OF GOODS SOLD | | 369,918 |
| | | |
| GROSS MARGIN | | 293,534 |
| | | |
| EXPENSES | | |
| Advertising | 1,000 | |
| Automotive | 8,063 | |
| Bank Fees | 2,442 | |
| Depreciation (Estimated) | 8,933 | |
| Dues and Subscriptions | 1,316 | |
| Employee Benefits | 1,882 | |
| Insurance | 27,370 | |
| Interest Expense (Estimated) | 18,802 | |
| Licenses and Taxes | 6,945 | |
| Office Expense | 2,495 | |
| Rent | 8,076 | |
| Repairs | 2,057 | |
| Supplies | 1,289 | |
| Test Equipment | 2,864 | |
| Trash Removal | 650 | |
| Telephone | 3,458 | |
| Travel and Entertainment | 3,000 | |
| Utilities | 9,091 | |
| Wages | 68,305 | |
| | | |
| TOTAL OPERATING EXPENSES | | 178,038 |
| | | |
| NET INCOME FROM OPERATIONS | | $ 115,496 |

See Accompanying Compilation Report

"A"

# EXHIBIT "B"

# RED EAGLE AVIONICS

## AGREEMENT FOR SALE OF BUSINESS ASSETS

THIS AGREEMENT FOR SALE OF BUSINESS ASSETS is made this 3rd day of January, 2006, by and between:

> Red Eagle Avionics, Inc., a Delaware corporation (hereinafter referred to as the "Corporation") Tax I.D. No. 51-0338642, and Donald Mark Ehart (hereinafter referred to as "Ehart"). The Corporation and Ehart, jointly and severally, are hereinafter referred to as "Seller"

> and

> Red Eagle Avionics, LLC, a Delaware Limited Liability Company (hereinafter referred to as "Purchaser") Tax I.D. No. 03-0576592.

## RECITALS

A.    The Corporation is engaged in the aircraft avionics installation and repair business at 1 Dale's Way, New Castle, Delaware 19720 (hereinafter referred to as the "Business"):

B.    The Corporation owns the hangar at the aforesaid address (the "Hangar"), erected on a portion of 0.4696± acres of land leased by New Castle County (as Lessor) to the Corporation (as Lessee) pursuant to a lease dated February 1, 1994 (the "Lease"). New Castle County thereafter assigned its interest in the Lease as Lessor to the Delaware River and Bay Authority ("DRBA") pursuant to an Assignment and Assumption of Leases dated June 30, 1995 and recorded in the Office of the Recorder of Deeds in and for New Castle County, Delaware on October 25, 1995 in Book 2000, Page 285. A copy of the Lease is attached hereto as

1

"B"

Exhibit A.    The Corporation also owns other improvements installed by the Corporation on the leased premises surrounding the Hangar, including parking spaces, fencing, landscaping, etc., (hereinafter the "Improvements").    Certain portions of the Hangar are used by the Corporation in the operation of its Business. Other portions of the Hangar are leased by the Corporation to one or more tenants;

C.    Ehart is the sole stockholder of the Corporation;

D.    The Corporation desires to sell and Purchaser desires to purchase certain of the Corporation's business assets (hereinafter referred to as the "Business Assets") in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and conditions and mutual promises, understandings and agreements contained herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    Sale of Business Assets.    In reliance upon the representations, warranties and agreements and subject to the terms and conditions herein contained, the Corporation hereby sells, transfers, conveys, assigns and delivers to Purchaser, and Purchaser hereby purchases from the Corporation, all of the following Business Assets:

(a)    Equipment, including shop machinery equipment, office furniture and equipment, vehicles, maintenance equipment, supplies and all spare parts inventory and all other assets of the Corporation used in the Business, some of which are more particularly described on Exhibit B attached hereto and made a

2

part hereof;

      (b)     The Hangar and Improvements;

      (c)     The Corporation's Lease, as Lessee, with DRBA successor in interest to New Castle County, as Lessor;

      (d)     The Corporation's goodwill;

      (e)     The name, Red Eagle Avionics;

      (f)     Any leases that may exist with the Corporation's tenants, as set out more particularly on Exhibit C attached hereto and made a part hereof;

      (g)     All of the Corporation's customer lists, used in connection with the Business, which shall include the names and addresses of all customers which have transacted business with Seller.

      2.    <u>Excluded Assets</u>.  Specifically excluded from the assets hereby purchased are:

      (a)     The Corporation's cash and cash equivalents;

      (b)     The Corporation's Accounts receivable;

      (c)     Any deposits, including utility deposits unless transferred to Purchaser, in which case Purchaser shall reimburse the Corporation.

      3.    <u>The Purchase Price</u>.  The Purchase Price is Two Million Two Hundred Thousand Dollars ($2,200,000.00).

      4.    <u>Payment of the Purchase Price</u>.  The purchase price is hereby paid by Purchaser to Seller as follows:

      (a)     One Million Dollars ($1,000,000.00) is hereby paid in cash

by wire transfer, certified check, or by attorney's check.

      (b)    Purchaser hereby delivers to the Corporation a Promissory Note ("Note") in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00). The Note is payable monthly with interest at 8.5% per annum, and is self-liquidating pursuant to a twenty year amortization schedule (240 months) with equal monthly payments for principal and interest of $10,413.88, in the form attached hereto.

      5.   <u>Security</u>.   The Note is secured by a first lien on the Leasehold Interest, the Hangar and the Improvements, by a mortgage executed by Purchaser, delivered to the Corporation and to be recorded in the New Castle County Recorder of Deeds' Office.

      6.   <u>Allocation of Purchase Price</u>.   The Purchase Price of $2,200,000.00 is hereby allocated as follows:

| | | |
|---|---|---|
| (a) | Hangar | $1,870,000.00 |
| (b) | Improvements | -0- |
| (c) | Good will | -0- |
| (d) | Equipment | 200,000.00 |
| (e) | Inventory | 30,000.00 |
| (f) | Covenant not to compete | 100,000.00 |
| | Total | $2,200,000.00 |

4

7.    <u>Adjustments for Ongoing Business Matters as Between Purchaser and Seller</u>.

(a)    Purchaser shall pay the Corporation separately for any prepaid expenses accepted by Purchaser;

(b)    Purchaser and the Corporation shall prorate and/or adjust as of the date hereof any lease payments, storage payments, utilities and other normal and usual reoccurring expenses of the business, such as rent, etc., payments received by the Corporation prior hereto, which requires Purchaser to provide goods or services hereafter, maintenance work in process or any other payments received by Purchaser hereafter for which the Corporation provided goods or services prior hereto; provided that Purchaser shall not be obligated to pay the Corporation until Purchaser has been paid.

(c)    All such prorations and adjustments shall actually be made between the Corporation and Purchaser after the date hereof, but as soon as practical.

7.    <u>Representations and Warranties of Seller</u>.    Seller, jointly and severally, represents and warrants to Purchaser as follows:

(a)    <u>Organization.</u> The Corporation is duly organized, validly existing and in good standing under the laws of the State of Delaware and has full corporate power and authority and all governmental and other permits, licenses and authorizations necessary to own or lease and use its respective assets and to carry on its respective business as now conducted. Seller has delivered to Purchaser

a Good Standing Certificate.

      (b)   <u>Ownership and Condition of Assets</u>.  The Corporation has good and marketable title to the Business Assets, Leasehold Interest and Improvements.  Seller hereby sells the Assets free and clear of all liens, claims, charges or security interests.  However, the Hangar and the Improvements are subject to the Lease.

      The Corporation has made no previous assignment, transfer or sale of its interest in the Lease, nor is the Corporation in default or breach of any obligation or duty of Lessee arising under the Lease.

      (c)   <u>The Corporation's Creditors</u>.  The Corporation shall pay all of its creditors either immediately or in due course and as soon as practicable. The Corporation has furnished to Purchaser a list of its creditors that it will pay and the amount owed to each. Purchaser is not accepting liability for any of the Corporation's obligations unless specifically agreed to and set out herein. Among the Corporation's debts which are being paid in full by the Corporation from the Corporation's proceeds of this sale are the following:

      (i)   Commercial Loan from Wachovia Bank in the total amount, including accrued interest, of $445,905.21; To secure this loan, the Corporation granted a Leasehold Mortgage and Assignment of Leases to Wachovia Bank's predecessor in interest, First Union National Bank of Delaware, dated April 4, 2001 and recorded April 10, 2001 in the Office of the Recorder of Deeds in and for New Castle County, Delaware in Instrument #20010410-002505.  This lien is to be

satisfied of record after receipt of payment of the loan in full by Wachovia;

(ii)    Small Business Administration Loan in the total amount, including accrued interest, of $30,583.56.

(d)    <u>Availability of Other Property</u>.    Seller hereby makes available to Purchaser by leaving at the Business Premises any other tangible or intangible property used in the Business of Seller, including but not limited to, operating manuals, maintenance records, books, records, materials, manuals, plans, drawings, computer programs and software and other data relating to the Business unless specifically excluded pursuant to Paragraph 2 above.    With regard to the books and records of the Corporation, Seller will retain possession of such books and records, but physically maintain them at the Business premises for a period of two years following closing.    During this period of time, Purchaser will have access to those records and shall have the right to copy any of them.    Thereafter, Seller shall have the right to remove the books and records from the Business premises, but for the next three years, upon the request of Purchaser, Seller will provide Purchaser with reasonable access to and copies of the same.

(e)    <u>Authorization</u>.    The execution, delivery and performance of this Agreement and Sale by the Corporation has been duly and validly authorized by the Corporation's Board of Directors and by all necessary stockholder action. Neither the execution and delivery nor performance of this Agreement by Seller constitutes a violation of, or results in a default, the acceleration of any obligation, or the imposition of any lien under, the certificate of Incorporation, By-Laws of the

7

Corporation, or any statute, law, rule or order applicable to Seller, or any contract, agreement, indenture, mortgage or other instrument to which Seller is a party or to which any of its assets are subject.

(f) <u>Governmental Licenses.</u>   The Corporation operates its Business pursuant to a United States Department of Transportation Federal Aviation Administration Air Agency Certificate No. VRUR564L, empowering the Corporation to operate an approved repair station with certain ratings and limitations as specified in said Certificate.

(g) <u>DRBA'S Approval.</u>   DRBA has provided its written consent to the Corporation's assignment of the Lease to Purchaser and Purchaser granting to the Corporation a mortgage and security agreement with respect to the Lease, the Hangar and leasehold improvements to secure Purchaser's Promissory Note to the Corporation.

(h) <u>Other Approvals.</u>   With the exception of any approvals required by the Federal Aviation Administration in connection with Purchaser's acquisition of a similar aircraft repair station certificate, no governmental authorization, permit or approval is required on the part of Seller to enter into or perform this Agreement or to carry out the transactions completed hereby.

(i) <u>Tax Matters.</u>   Seller has filed all Federal, State, and local tax returns which they are required to file, and has paid all taxes, interest, penalties, assessments and deficiencies, including but not limited to Federal Excise taxes, which have become due as shown in such returns or which have been claimed

8

to be due.  Seller is current in the payment of income, property, franchise, sales and withholding taxes and other employee benefits, taxes or imposts.  No examination by the Internal Revenue Service, or the Delaware Division of Revenue is presently being conducted or has been conducted for any year as to which the statute of limitations has not run.  Seller has received no notice of an examination from the Internal Revenue Service or the Delaware Division of Revenue.

(j)    <u>Books and Records</u>.    All business records and customer lists of Seller are in all material respects complete and correct.

(k)    <u>Equipment, Hangar and Improvements</u>.    All equipment, the Hangar, including its mechanical systems, and the Improvements sold hereunder are owned entirely by the Corporation and are in good operating condition.

(l)    <u>Insurance Policies.</u>    All theft, casualty, liability and other insurance policies insuring Seller and the property sold and purchased hereunder continue to be duly in force at the time of this Sale.  Seller is not in default with respect to any provisions of any such policy, nor has Seller failed to give any notice or present any material claim under any such policy in a due and timely fashion. Seller has provided Purchaser with a copy of each insurance policy (other than life) maintained by Seller.

(m)    <u>Correspondence with Government Agencies</u>.    Seller has not received any correspondence or other communications that affect the Assets or Seller's business from or addressed by it to any governmental agency or

instrumentality, whether state, local or federal, including but not limited to matters involving OSHA, the Environmental Protection Agency and/or the Federal Aviation Administration and/or the United States Department of Transportation, within the three year period ending as of the date hereof, relating to any violation, possible violation, potential violation or alleged violation of any applicable law, regulation or ordinance.

      (n)    <u>Litigation and Investigations.</u>  Seller is not a party to or threatened with any litigation, suit, action, investigation, proceeding or controversy before any court, administrative agency or other governmental authority which might result in any material adverse change in the licenses, business operations, properties or assets of Seller or in its condition, financial or otherwise, or in any way involving this Agreement or the transactions contemplated hereby and, to the best of Seller's knowledge, is not subject to or in violation of or in default with respect to any judgment, order, writ, injunction, decree or rule of any court, administrative agency or governmental authority or under any regulation of any administrative agency or governmental authority. Seller has complied in all material respects, and is complying in all material respects, with all laws, rules, regulations and ordinances affecting its business.

    8.    <u>Representations and Warranties of Purchaser.</u>

      (a)    <u>Organization</u>.  Purchaser is a limited liability company duly organized and validly existing under the laws of the State of Delaware and has full power and authority to enter into and perform this Agreement. Purchaser has

delivered to Seller a Good Standing Certificate.

(b)    <u>Authorization</u>.    The execution, delivery and performance of this Agreement by Purchaser have been duly authorized by Purchaser's sole member, David Cannavo. Neither the execution and delivery nor the performance of this Agreement by Purchaser constitutes a violation of, or results in a default, the acceleration of any obligation, or the imposition of any lien under Purchaser's certificate of formation, Purchaser's operating agreement, any statute, law, rule or order applicable to Purchaser or any contract, agreement, indenture, mortgage or other instrument to which Purchaser is a party or to which any of its assets are subject. No governmental authorization, permit or approval is required on the part of Purchaser to enter into or perform this Agreement or to carry out the transactions contemplated hereby.

(c)    <u>Validity</u>. This Agreement constitutes, and upon execution and delivery the Note, and all other documents executed in connection herewith, will constitute the valid and binding obligation of Purchaser enforceable against Purchaser in accordance with their respective terms, except to the extent limited by applicable bankruptcy, reorganization, insolvency, moratorium or other similar laws of general application relating to or affecting the enforcement of creditors' rights.

(d)    <u>Litigation</u>.    There is no litigation at law or in equity nor any proceeding before any governmental board or agency, not fully covered by insurance, pending or, to Purchaser's knowledge, threatened which will in any way

inhibit or prevent Purchaser from fulfilling and performing all of its obligations under this Agreement and the documents to be delivered hereunder.

9.    <u>Non-competition Agreement</u>.    Seller has, as part of this transaction, executed and delivered to Purchaser a non-competition agreement.

10.    <u>Covenants</u>.

(a)    At Purchaser's option, Seller shall cooperate in transferring the Corporation's State of Delaware Unemployment Compensation Rating to Purchaser and any other transferable license, permit, etc. necessary for Purchaser to conduct the business of Seller.

(b)    Seller shall pay all of its Employees regular wages, wage supplements, benefits, including any accrued but unused vacation pay, up to the date hereof. Seller and Purchaser shall cooperate in the form of notice to be given to Seller's employees regarding this transaction.

(c)    The Corporation shall immediately cease to use the name Red Eagle Avionics.   The Corporation shall execute all necessary documents to change its corporate name on the records of the Delaware Secretary of State to a name not similar in any respect to Red Eagle Avionics to be chosen by Seller, thereby enabling Purchaser to use the name Red Eagle Avionics in Purchaser's operation of the Business.

11.    <u>Miscellaneous</u>.

(a)    <u>Indemnification by Seller For Third Party Claims</u>.   For a period of three (3) years following Closing, Seller hereby agrees to indemnify and

hold Purchaser harmless against all loss and damage (including reasonable attorney's fees and other expenses incurred in investigation, litigating and settling any claims) of whatever nature suffered by Purchaser at any time, in connection with any claim made against Purchaser by a creditor of Seller.

(b)     Purchaser shall have the right to set off any amounts due and owing to it by Seller based on indemnification hereunder against any amounts otherwise owing by Purchaser to Seller under the Promissory Note in accordance with the following procedure.

(i)     Purchaser shall notify the Seller with reasonable promptness pursuant to the Notice provisions hereof (the "Notice") of any claim that has been asserted against Purchaser for which Purchaser is entitled to indemnification hereunder.  Upon receiving such notice, the Seller and Purchaser shall jointly determine if they can agree on a method of treating the claim and Purchaser's exposure thereon. If no such agreement is reached within sixty (60) days of the posting of notice, the dispute shall be submitted to binding arbitration as provided for herein. Purchaser shall not have the right to cease making payments due under the Note during the pendency of the claim and shall only have such right if ordered by the arbitrator.

(c)     <u>Indemnification By Purchaser</u>.  For a period of three (3) years following Closing, Purchaser shall indemnify and hold Seller harmless against all loss and damage (including reasonable attorney's fees and other expenses incurred in investigation, litigating and settling any claims) of whatever

13

nature suffered by Seller at any time, in connection with any claim made against Seller by a creditor of Purchaser.

(d)   <u>Miscellaneous</u>.  The indemnification remedies provided herein by this section shall be in addition to any remedies available to either party provided by law for breach of any warranty or misrepresentation or in any promise under this agreement.

(e)   <u>Survival of Warranties</u>.  All representations, warranties and agreements made by Seller and Purchaser in this Agreement, or pursuant thereto, shall survive these transactions.

(f)   <u>Successors</u>.   This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.  All obligations of Seller shall be joint and several.

(g)   <u>Governing Law</u>.   This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

(h)   <u>Cumulative Remedies</u>.  No remedy conferred by any of the specific provisions of this Agreement is intended to be exclusive of any other remedy, and each remedy shall be cumulative and shall be in addition to every other remedy provided herein or by law. The election of anyone or more remedies by Purchaser or Seller shall not constitute a waiver of a right to pursue other available remedies.

(i)   <u>Notice</u>.   Any notice or other communications required or

14

permitted hereunder shall be sufficiently given only if sent by registered or certified mail, postage prepaid, addressed as follows or to such other address or addresses as may hereafter be furnished in writing by notice similarly given by one party to the other:

To Purchaser:

c/o David Cannavo
1 Dale's Way
New Castle, Delaware 19720

To Seller:

c/o Donald Mark Ehart
795 Union Church Road
Townsend, Delaware 19734

Copy to:

David Roeberg, Esquire
Roeberg, Moore & Friedman, P.A.
910 Gilpin Avenue
Wilmington, Delaware 19806

Copy to:

     (j)   <u>Modification</u>. This Agreement shall not be modified or amended except by written agreement of all parties hereto. Any dispute between the parties regarding this Agreement shall not be decided on the basis of authorship.

     (k)   <u>Expenses</u>. Seller and Purchaser will each pay their own costs and expenses incident to the transactions contemplated hereby, including but not limited to the fees and expenses of their respective counsel and accountants.

     (l)   <u>Headings.</u> The headings of the paragraphs of this Agreement are inserted for convenience of reference only and shall not be considered a part hereof.

     (m)   <u>Further Assurances</u>. Each of the parties hereto shall

from time to time at the request of any other party hereto, and without further consideration, execute and deliver to such other party such further instruments of assignment, transfer, conveyance and confirmation and take such other action as such other party may reasonably request in order to fulfill more effectively the transactions hereby completed for the purposes of this Agreement.

(n)    Counterparts.    This Agreement may be executed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument, but all of such counterparts taken together shall be deemed to constitute one and the same instrument.

(o)    Time is of the Essence.    Time shall be of the essence in this Agreement.

(p)    Broker Fees.    Each party shall be solely responsible for the payment of any brokerage fees that it might be liable for and agrees to indemnify and hold each other harmless from the payment of any such fees. Seller and Purchaser each represent that it has not engaged any broker with respect to this transaction and that no broker is entitled to any fee or compensation with respect to this transaction.

(q)    Arbitration.    Any dispute which arises under this Agreement shall be decided through binding arbitration, conducted under the auspices of the American Arbitration Association.    Any such arbitration shall be conducted in accordance with the Rules of the American Arbitration Association, before a single arbitrator, in Wilmington, Delaware.    Arbitration shall be

commenced by either party giving written notice of a demand for arbitration to the other party, setting out party giving written notice of a demand for arbitration to the nature of the dispute which is alleged. All costs and expenses of the arbitration, including attorney's fees, shall be allocated among the parties according to the arbitrator's discretion. The arbitrator's award resulting from such arbitration shall be confirmed and entered as a final judgment in the Court of Chancery of the state of Delaware in and for New Castle County.

IN WITNESS WHEREOF, each of the parties hereto has fully executed this Agreement all as of the day and year first above written.

SELLER:
Red Eagle Avionics, Inc., a
Delaware Corporation

By: _____
    Donald Mark Ehart, President and
                                Secretary

Date of Signature: _1-3-06_____

[Corporate Seal]

_____        _____(SEAL)
Witness                        DONALD MARK EHART, Individually

                               Date of Signature: _1-3-06_____

*(Signatures continue on next page)*

17

PURCHASER:
Red Eagle Avionics, LLC, a
Delaware Limited Liability Company

By: _David Cannavo_

David Cannavo, Member

Date of Signature: _1-3-06_

EXHIBIT A


### AGREEMENT

THIS AGREEMENT, made this first day of February 1994, by and between NEW CASTLE COUNTY, a political subdivision of the State of Delaware (hereinafter referred to as "Lessor") and RED EAGLE AVIONICS, INC., a corporation of the State of Delaware (hereinafter referred to as "Lessee").


### W I T N E S S E T H

WHEREAS, Lessor is the owner of property constituting the New Castle County Airport (hereinafter referred to as "Airport"); and

WHEREAS, New Castle County Economic Development Corporation is the authorized agent for Lessor; and

WHEREAS, Lessee desires to lease certain land within the Airport; and

WHEREAS, Lessor and Lessee have agreed upon the terms of a lease for such land.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein the parties hereto agree, as follows:

1. <u>Demised Premises</u>. Lessor shall lease to Lessee, and Lessee shall lease from Lessor, a 0.4696 acre parcel of land at the Airport, as is more particularly described by the property description on Exhibit "A" attached hereto and made a part hereof.

2. <u>Term</u>. The initial term of this Agreement is twenty (20) years beginning on the day and year first above-mentioned. In addition to the initial term, Lessee is hereby granted two (2) renewal options of ten (10) years each. Each option may be exercised by Lessee by mailing written notice to the offices of the New Castle County Economic Development Corporation or such other place or places as may from time-to-time be designated by Lessor, not less than one hundred twenty (120) days prior to the expiration date of the then current term. Cancellation or termination of the initial term, or any applicable option term defeats Lessee's right to exercise any subsequent option(s).

1

3.   Rent.

A.   Lessee agrees to pay to Lessor annual rent in the sum of Eleven Thousand Five Hundred Dollars ($11,500) per acre during the first year of the initial term of this agreement. During the second through twentieth year of the initial term of this Agreement, at the inception of each annual period, the annual rent shall escalate by the percentage increase, on an annualized basis, equal to the most recent U. S. Department of Labor, Bureau of Labor Statistics, Philadelphia Regional Office's Consumer Price Index ("C.P.I.").

B.   Within one hundred and twenty (120) days prior to the commencement of the twentieth (20th) year of the initial term, the Lessor and Lessee each shall select an appraiser and have them determine an annual fair market rental value for the demised premises for the first year of the first option term. If the chosen appraisers cannot reach agreement on an annual fair market rental value for the demised premises within forty-five (45) days of selection, they shall within five (5) business days mutually agree upon a third appraiser, whose determination of an annual fair market rental value shall be final.   The Lessee shall pay, at its sole expense, the initial appraiser it selects and the third appraiser, if one should be necessary. During the second (2nd) through tenth (10th) years of the first option term, at the inception of each annual period, the annual rent shall escalate by the percentage increase equal to the then most recent annualized C.P.I.

C.   The same procedure set forth in Paragraph 3-B shall be followed in order to determine the annual rent for the first year of the second option term.   During the subsequent years of the second option term, at the inception of each annual period, the annual rent shall escalate by the percentage increase equal to the then most recent annualized C.P.I.

D.   Lessee also agrees to serve as a tiedown manager for twenty (20) available tiedown spots on the public aircraft parking ramp, as is more particularly described by the property description on Exhibit "B" attached hereto and made a part hereof.   Lessee further agrees to charge a minimum tiedown rent of Seventy-Five Dollars ($75) a month for each tiedown spot. Lessee will provide Lessor with a monthly report on the number of prior month's tiedown aircraft, with payment to Lessor representing twenty percent (20%) of the monthly gross revenue collected from tied-down aircraft on the public aircraft parking ramp.

4.   Rent Payment.   The rent due hereunder is payable monthly in an amount equal to one-twelfth (1/12) of the rent calculated pursuant to Paragraph 3 of this Agreement, in advance, on the first day of each month during the term of this

2

Agreement. Should this Agreement begin on a day other than the first of the month, the first rent payment shall be apportioned accordingly. Payments made after the fifth day of the month in which due shall be subject to a late fee of five percent (5%) of the total amount outstanding. All payments shall be made to the offices of the New Castle County Economic Development Corporation, or such other place or places as may from time to time be designated by the Lessor. As used in this Agreement, payment is considered to have been made on the date received by Lessor.

5. <u>Additional Fees</u>. Lessee shall pay such fees as specified in Section 3-1 of the New Castle County Code.

6. <u>Use of Premises</u>. Lessee shall use and occupy the Demised Premises for the purpose of operating and maintaining an airplane hangar and related uses. Additionally, Lessee shall operate and maintain public tiedowns for aircraft on a contractual basis with Lessor.

7. <u>Fuel Storage</u>. Lessee shall comply with all applicable federal, state, and local laws and regulations, and all rules of the Airport and the Local Board of Underwriters concerning the storage of petroleum products and the manner in c which the aircraft is fueled.

8. <u>Taxes</u>. Lessee shall pay all local, county, state and federal taxes with regard to demised premises for the duration of this Agreement and any and all renewals or extensions thereof.

9. <u>Net Lease</u>. This Agreement shall be without cost to the Lessor for the maintenance and/or improvement of the demised premises. It shall be the sole responsibility of Lessee to maintain, repair, and operate the entirety of the demised premises, and all improvements and facilities placed thereon, at Lessee's sole cost and expense. Lessee agrees that it shall keep the demised premises from falling out of repair or deteriorating and shall keep the demised premises in a condition comparable to other first class corporate facilities at the Airport.

10. <u>Trash, Garbage, Hazardous Substances, Etc</u>. Lessee shall provide for the complete and proper arrangement and the safe use and adequate sanitary handling and lawful disposal of materials, away from the Airport, of all trash, garbage, hazardous substances, and other refuse caused as a result of the operation of its business. Lessee shall provide and use suitable covered receptacles for all such garbage, trash, hazardous substances and other refuse. Lessee shall abide by all local, county, state and federal regulations which are applicable regarding the use, handling, and disposal of trash, garbage, and hazardous substances.

3

11. <u>Right of Ingress and Egress</u>.  Lessor grants to Lessee the right of ingress to and egress from the demised premises subject to existing ordinances and regulations and to such other laws, rules, or policies which may hereafter have application at the Airport.

12.  <u>Improvements/Alterations</u>.

(a)  <u>Lessor's Approval</u>.  Lessee shall make no alterations, additions or improvements to the demised premises without the prior written approval of Lessor, which approval shall not be unreasonably withheld.  Any such alteration, addition, or improvement shall be constructed in accordance with all applicable federal, state, and local laws, and ordinances, including the New Castle County Building and Zoning Codes.  Lessee shall be fully responsible for any damage to property or injury to person resulting from alterations, additions or improvements made by it to the demised premises, and shall hold Lessor harmless with respect thereof.  All improvements erected on the demised premises by Lessee shall become the property of Lessor upon the expiration, cancellation or sooner termination of this Agreement.

(b)  <u>Completion Documents</u>.  On the completion date of any alterations, additions, or improvements, the Lessee shall deliver to Lessor each of the following:

(1)  A certificate of completion by the architect who supervised the construction which shall state that all work has been completed in accordance with the approved plans and specifications;

(2)  Any and all certificate(s) of occupancy, and any equivalent permit(s) or certificate(s) which may be required by any and all federal, state, county, and local governmental authorities; and

(3)  A survey of the demised premises, showing the completed structure and showing that there are no encroachments by it on any adjoining premises in compliance with all laws.

(c)  <u>Certificate of Title</u>.  Within thirty (30) days after the completion date, Lessee shall deliver to Lessor the certificate of a duly licensed title company or its agency, currently dated, that the time for the filing of all mechanics', materialmens', and/or similar liens has expired, or, if such is not the case, that a search of the record shows that no liens or lis pendens then encumber the demised premises.  If the latter information is furnished by such title company, or its agency,

4

then, within ninety (90) days thereafter Lessee shall deliver a further certificate of such title company that no liens or lis pendens then encumber the leased property.

(d) <u>Mechanics' Liens</u>. In the event that any mechanics', materialmens', and/or similar liens shall at anytime be filed against the demised premises or any improvements thereof by reason of work, labor, services or materials per-formed or furnished to Lessee or to anyone holding the demised premises through or under Lessee, Lessee shall forthwith cause the same to be discharged or recorded or bonded to the satisfac-tion of Lessor. If Lessee shall fail to cause such lien forthwith to be so discharged or bonded after being notified of the filing thereof, then, in addition to any other right or remedy of Lessor, Lessor may discharge the same by paying that amount so that any and all costs and expenses, including reasonable attorneys' fees, incurred by Lessor in procuring the discharge of such lien, shall be due and payable by Lessee to Lessor within fifteen (15) days following Lessor's written demand for such sums.

(e) <u>Reversionary Interest Impairment</u>. All al-terations and improvements made by Lessee, shall be at Lessee's sole cost and expense, and shall be made upon the credit of Lessee and Lessee's leasehold interest, and nothing herein con-tained shall be construed as a consent by the Lessor to any statutory or judgment lien being entered against the Lessor's reversionary fee simple title by reason of Lessee's alterations or improvements.

13. <u>Right to Have Improvements Removed</u>. Upon the termination of this Agreement, should any existing structure have, in the opinion of Lessor, no further practical economic value or utility, Lessor shall, at its sole option, be entitled to have the land demised herein returned to it clear of all im-provements above and below ground level; <u>provided, however</u>, that Lessee shall have one hundred eighty (180) days after such ter-mination in which to remove such improvements, and provided that such an occupancy for purposes of removal shall be subject to the last rent rates applicable hereunder. If Lessee fails to so remove said improvements, Lessor may thereafter remove said im-provements at Lessee's expense. In the event that the demised premises, including all improvements, are not cleared to ground level, it is understood that said improvements, including, without limitation all remaining trade fixtures, machinery, and equipment shall revert to and become the property of Lessor.

14. <u>Utilities</u>. Lessee shall assume and pay all costs or charges for all utility services furnished to Lessee during the term hereof; <u>provided, however</u>, that Lessee shall have the right, subject to Lessor's approval of design and specifica-tions, to connect to storm and sanitary sewers and water and

utility outlets at Lessee's own cost and expense, and Lessee shall pay for any and all service charges incurred therefor. If Lessee uses, operates, or maintains sewage, water, or any other utility service on the demised premises, Lessee shall assume and pay for necessary meters for measuring said service and all charges for providing such service. Where possible, Lessee shall be billed and pay the charge of the utility company directly to the utility company. Lessee will not place structures over sanitary sewers or water mains, and if such be on the demised premises, Lessor shall have the right to enter the demised premises for the purpose of inspecting, repairing, or replacing same. It is also understood that any electrical work performed by Lessee shall conform with any authority having jurisdiction thereof and shall meet with the requirements of the Delmarva Power & Light Company, its successors and assigns. It is further understood that any utilities may be transferred, sold, or assigned by the Lessor to a public or private contractor, in which event that contractor will have the rights of the Lessor with reference to the utility involved.

15. _Possession_. Lessee agrees that in the event of Lessor's inability to deliver possession of the demised premises on the execution date of this Agreement, Lessor shall not be liable for any damage caused thereby, nor shall this Agreement be deemed void or voidable. In the event that Lessor is unable to deliver possession on the execution date of this Agreement, the commencement date of this Agreement shall be postponed until such date upon which Lessor is able to deliver possession, the rent due hereunder shall be abated proportionately and the expiration date, as well as all other terms, covenants and conditions of this Agreement, shall remain unchanged.

16. _Signs_. Lessee may, upon the approval of Lessor, erect such sign(s) on the demised premises as shall be necessary to advertise business provided it complies with all applicable federal, state, and local laws and regulations, as well as rules of the Airport. Upon the termination of this Agreement, Lessee shall remove all signs erected by it and repair any damage caused thereby. Should Lessee violate any provision of this paragraph, Lessor may, at Lessee's expense, take whatever action is necessary to remedy the same and collect the expenses and costs thereof in addition to any and all rent due hereunder.

17. _Compliance With Laws_. Lessee shall comply with all applicable federal, state, and local laws, ordinances, and regulations, and all rules of the Airport and the Local Board of Underwriters concerning the use and occupancy of the demised premises. Lessor shall not permit the conduct of any business, trade, occupation, or other activity on the demised premises which would void or make voidable any policy of insurance held by Lessor thereon.

6

18. __Liability__.  Lessor, its officers, agents, and employees, shall not be liable for any damage or injury to Lessee, its officers, agents, or employees, or to any third party coming upon the demised premises in connection with Lessee's use of the premises, or for any damage or injury to any goods, chattels, or other property of Lessee, its officers, agents, or employees where due to any cause, except where such cause is the result of the willful negligence of Lessor, its officers, agents or employees.

19. __Inspection__.  Lessor, or its designee, shall have the right to enter the demised premises for the purpose of inspecting and completing such work as Lessor shall deem necessary for the safety or preservation of general Airport operations; __provided, however__, that such action will not interfere unreasonably with the conduct of Lessee's business.

20. __General Liability Insurance__.  Lessee shall procure general liability insurance with a limit of no less than one million dollars ($1,000,000.00) for each occurrence. The policy shall name Lessor as an insured and shall be carried by insurers licensed to do business in the State of Delaware and of recognized responsibility satisfactory to Lessor.  The policy shall expressly waive and bar any claim of subrogation against Lessor.  Lessee shall furnish Lessor with evidence that such coverage has been procured and is being maintained.  Said policy shall provide sixty (60) day notice of cancellation.  Lessee shall notify Lessor in the event of any cancellation or renewal of such policy.  Lessee shall notify Lessor in writing, as soon as practicable, of any claim, demand, or action arising out of an occurrence covered hereunder of which Lessee has knowledge.

21. __Worker's Compensation Insurance__.  Lessee shall procure a worker's compensation insurance policy in an amount equal to or exceeding the statutory limits for Delaware and an Occupational Diseases Insurance policy of no less than $100,000/$500,000/$100,000.  The policy shall be carried by insurers licensed to do business in the State of Delaware and of recognized responsibility satisfactory to Lessor.  The policy shall expressly waive and bar any claim of subrogation against Lessor.  Said policy shall provide sixty (60) day notice of cancellation.  Lessee shall furnish Lessor with evidence that such coverage has been procured and is being maintained.  Lessee shall notify Lessor in the event of any cancellation or renewal of such policy.

22. __Automobile Liability Insurance__.  If Lessee shall own, lease, use or employ company vehicles at or on the demised premises, Lessee shall procure automobile liability insurance with a limit of no less than one million dollars ($1,000,000.00) for each occurrence.  The policy shall name Lessor as an insured and shall be carried by insurers licensed to do business in the

State of Delaware and of recognized responsibility satisfactory to Lessor.  The policy shall expressly waive and bar any claim of subrogation against Lessor.  If applicable, Lessee shall furnish Lessor with evidence that such coverage has been procured and is being maintained.  Said policy shall provide sixty (60) day notice of cancellation.  Lessee shall notify Lessor in the event of any cancellation or renewal of such policy.  Lessee shall notify Lessor in writing, as soon as practicable, of any claim, demand, or action arising out of an occurrence covered hereunder of which Lessee has knowledge.

23.  <u>Aviation Liability Insurance</u>.  Lessee shall procure an aviation liability insurance policy with coverage of not less than one millon dollars ($1,000,000).  The policy shall name Lessor as an insured and shall be carried by insurers licensed to do business in the State of Delaware and of recognized responsibility.  Said policy shall provide thirty (30) days notice of cancellation.  Lessee shall furnish Lessor with evidence that such coverage has been procured and is being maintained.  Lessee shall notify Lessor in the event of any cancellation or renewal of such policy.

24.  <u>Indemnification</u>.  Lessee, for itself, its successors and assigns, covenants and agrees to indemnify and hold harmless Lessor, its officers, agents, employees, or designees, from any and all damage, injury, claim, or liability arising from Lessee's use and occupancy of the demised premises, except where such is due to the willful negligence of Lessor, its officers, agents, or employees.  It is expressly understood and agreed that the Lessee is and shall be deemed to be an independent contractor for purposes of this Agreement, and shall therefore be solely responsible to all parties for its respective acts and/or omissions.

25.  <u>Cancellation/Termination</u>.  This Agreement shall be subject to immediate cancellation by Lessor in the event Lessee shall:

(a)  be in arrears in the payment of the whole or any part of any amount due hereunder for a period of thirty (30) days after receipt of written notice from Lessor or its designee that such payments are due;

(b)  be in default in the performance of any covenant, term or condition of this Agreement and such default continues for a period of thirty (30) days after receipt from Lessor, or its designee, of written notice of such default; and

(c)  file a voluntary petition in bankruptcy or any petition for relief under any section of the bankruptcy laws of the United States; make any assignment for the benefit of creditors; be the subject of an involuntary petition in

8

bankruptcy; have appointed a receiver, custodian or trustee for Lessee by any court; or sell any of its interests under any execution process or other legal process as ordered by any court.

In the event of breach of this Agreement by Lessee, but no sooner than ten days following the mailing of written notice to Lessee of such breach, Lessor may, in addition to all other remedies available at law or equity, recover possession of the demised premises and remove Lessee's effects without being deemed guilty of trespass. Notwithstanding the recovery of possession by Lessor as a result of Lessee's breach, Lessee shall remain liable to Lessor for all amounts owing under this Agreement payable to the expiration date of the then current term, or any subsequent term for which Lessee has exercised its option pursuant to Paragraph 2 of this Agreement. Failure of Lessor to recover the demised premises upon the default of Lessee shall not serve to bar or destroy the right of Lessor to recover the demised premises or to otherwise exercise any and all of its rights at law or equity by reason of any subsequent violation of the terms of this Agreement.

26. <u>No Waiver</u>. The failure of Lessor to insist upon the strict performance of any of the terms, conditions and covenants herein, shall not be deemed a waiver of any rights or remedies available to Lessor, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained.

27. <u>Eminent Domain</u>. If all or any part of the demised premises shall be taken by any public authority under the power of eminent domain, the term of this Agreement shall cease as to that portion taken, on the date of possession, and any unearned rent paid or credited in advance shall be refunded, and from that day Lessee shall have the right either to cancel this Agreement and declare it null and void, or to continue in possession of the remainder of the demised premises under the terms herein provided, except that the rent shall be reduced in proportion to the portion of the premises taken. Lessee shall notify Lessor within thirty (30) days after receipt of notice of any taking, of its intention to cancel this Agreement; otherwise, the Agreement shall continue in full force and effect on the same terms and conditions herein provided as to the portion of the demised premises not taken. Lessee shall not be entitled to receive any part of any award or awards that may be made to or received by the Lessor.

28. <u>Notice</u>. Any notice required herein shall be given by registered or certified mail, postage prepaid, addressed, if to Lessor, at: New Castle County Economic Development Corporation, First Federal Plaza, Suite 536, 704 King Street, Wilmington, Delaware 19801 or such other place or places as may from time-to-time be designated by Lessor; and if to

Lessee, at:  Red Eagle Avionics, Inc., 160 Old Churchmans Road, New Castle, Delaware 19720.  Notice is considered to have been given upon the date mailed.

29.  <u>Holdover Tenancy</u>.  In the event that Lessee continues in possession of the demised premises beyond the expiration, cancellation or termination of this Agreement, or any renewals or extensions thereof, without Lessor's consent, such tenancy shall be presumed to be a tenancy from month-to-month and Lessee shall pay rent equal to twice the monthly rent then pertaining plus any other charges then owing, but nothing in this Paragraph shall be construed as consent by Lessor to such possession of the demised premises by Lessee beyond the term of this Agreement.

30.  <u>Discrimination</u>.  Lessee shall use, occupy, operate, and maintain the demised premises in accordance with all federal, state and local statutes regarding discrimination, and in such capacity neither it, nor any person or organization using or occupying the demised premises, shall discriminate against any person by reason of race, creed, color, religion, sex, age or national origin.

31.  <u>Right of Flight</u>.  Lessor reserves the right of flight for the passage of aircraft above the surface of the demised premises, together with the right to cause in such airspace such noise as may be inherent in the operation of aircraft now known or hereafter used, and Lessor reserves the right to use said air space for taking off from, landing at, or operating aircraft on said Airport.

32.  <u>Instrument of Transfer</u>.  This Agreement is subject to the provisions of the "Instrument of Transfer" between the United States of America and the Levy Court of New Castle County, Delaware, dated April 29, 1949, and effective as of October 27, 1947, as the same is of record in the Office of the Recorder of Deeds in Wilmington, Delaware, in Deed Record C, Volume 49, page 75, with respect to the premises herein leased, and subject to the right of the United States of America to repossess the premises under any war powers act that may exist or that may hereafter been acted with reference to property such as is covered by this lease, with no recourse for just compensation from the United States of America for such taking of Lessee's interest in the premises.  In the event of such dispossession, Lessee may, at its election, terminate this lease by written notice to Lessor, but if Lessee elects not to terminate, then the rent payable to Lessor shall be abated during the period Lessee is dispossessed, and upon repossession of the property by the Lessor a corresponding extension of the term of the Agreement shall become effective.

10

33. <u>Federal Aviation Administration Sponsor's Assurances</u>. This Agreement is subject to the provisions of Chapter 14, Part 152, Appendix D, of the Code of Federal Regulations "Assurances" (14 CFR 152D) that are applicable to this activity. Lessee will not construct, erect, or alter any structure or other object in the approach areas of the runways of the Airport, or allow the growth of any tree, which would constitute an airport hazard. In addition, Lessee will not erect or permit the erection of any permanent structure or facility which would interfere materially with the use, operation, or future development of the Airport, in any portion of a runway approach area in which the Airport has acquired, or hereafter acquires, property interests.

34. <u>Paragraph Headings</u>. The paragraph headings contained herein are for convenience in reference only and are not intended to define or limit the scope of any of the provisions of this Agreement.

35. <u>Successors and Assigns</u>. All of the terms, covenants and conditions of this Agreement shall be binding upon and shall inure to the benefit of the successors, subtenants and assigns of the respective parties hereto, except that the option provisions of Paragraph 2 herein shall not inure to the benefit of the subtenants and assigns of Lessee.

36. <u>Integration</u>. This document, which includes Exhibit "A" and Exhibit "B," comprises the entire Agreement between the parties hereto relative to the subject matter hereof, and no earlier agreements, leases or other understandings entered into by either party or its predecessors or assignors in connection therewith shall be of any force or effect.

37. <u>Attorney's Fees</u>. In any action brought by Lessor for the enforcement of the obligations of the Lessee hereunder, Lessor shall be entitled to recover reasonable attorney's fees.

38. <u>Equal Employment Opportunity</u>. Lessee shall operate in accordance with all federal, state and local laws regarding equal employment opportunity and further agrees to adopt a policy statement regarding equal employment opportunity and post such statement in a prominent place at the demised premises.

39. <u>Laws of Delaware</u>. This Agreement shall be governed by the laws of the State of Delaware.

40. <u>No Assignment/Encumbrance</u>. Lessee shall not assign, transfer or otherwise encumber all or any portion of its interest in this Agreement except with the prior written consent of Lessor, which shall not be unreasonably withheld. If Lessee merges into, consolidates with, liquidates or sells all or a

11

substantial part of its assets to any person, corporation or other organization, such action shall constitute an assignment or transfer for purposes of this Agreement.  Any such assignment, transfer or encumbrance, which has been approved in writing by Lessor, shall be subject to all the provisions of this Agreement and shall be only for the uses specified in Paragraph 6 hereof.

IN WITNESS WHEREOF, the parties hereto set their hands and seals caused the day and year first above mentioned.

Witness:                              NEW CASTLE COUNTY

_____    By: _____ (SEAL)
                                   Dennis Greenhouse
                                   County Executive


Attest:                               RED EAGLE AVIONICS, INC.

_____    By: _____ (SEAL)
                              Title: _PRESIDENT_____

12

# EXHIBIT "C"

06/28/2006 TUE 09:24 FAX 3022341877                                                                ☺005

## RED EAGLE AVIONICS, INC.
## STATEMENT OF OPERATIONS
### FOR THE YEAR ENDED DECEMBER 31, 2005

| | | |
|---|---:|---:|
| **SALES** | | $ 1,119,169 |
| **COST OF SALES** | | |
| Materials | $ 708,598 | |
| Freight | 5,462 | |
| Subcontract | 13,330 | |
| TOTAL COST OF GOODS SOLD | | 727,390 |
| **GROSS MARGIN** | | 391,779 |
| **EXPENSES** | | |
| Advertising | 1,000 | |
| Automotive | 12,097 | |
| Bank Fees | 4,513 | |
| Depreciation | 17,600 | |
| Dues and Subscriptions | 1,611 | |
| Employee Benefits | 2,600 | |
| Insurance | 50,528 | |
| Interest Expense | 39,504 | |
| Licenses and Taxes | 14,062 | |
| Office Expense | 7,846 | |
| Rent | 15,842 | |
| Repairs | 3,072 | |
| Supplies | 7,323 | |
| Trash Removal | 1,668 | |
| Telephone | 6,909 | |
| Travel and Entertainment | 3,000 | |
| Utilities | 14,849 | |
| Wages | 135,091 | |
| TOTAL OPERATING EXPENSES | | 339,115 |
| **NET INCOME FROM OPERATIONS** | | $ 52,664 |

See Accompanying Compilation Report

"C"

# EXHIBIT "D"

Tax Parcel No. 10-018.00-006/L0082

Prepared by and Return to:

Roeberg, Moore & Friedman, P.A.
910 Gilpin Avenue
Wilmington, Delaware 19806

## ASSIGNMENT OF LEASE AGREEMENT
## AND TRANSFER OF OWNERSHIP OF IMPROVEMENTS

In consideration of and pursuant to an Agreement for Sale of Business Assets of even date hereof, the terms of which are hereby incorporated by reference and included as a part hereof, Red Eagle Avionics, Inc., a Delaware Corporation ("Assignor"), by its President and Secretary, hereby assigns, sells, transfers and sets over to Red Eagle Avionics, LLC, a Delaware Limited Liability Company ("Assignee"), all of its right, title and interest in and to the following property:

1.    Assignor's interest as Lessee in 0.4696± acres of land located at 1 Dale's Way, New Castle County Airport, New Castle, Delaware 19720, pursuant to a Lease Agreement dated February 1, 1994 with Delaware River and Bay Authority, Assignee of New Castle County, Lessor. A true and correct copy of the aforesaid Lease Agreement dated February 1, 1994 is attached hereto. New Castle County's Assignment of its interest in the Lease Agreement, as Lessor, to Delaware River and Bay Authority was pursuant to a certain Assignment and Assumption of Leases dated June 30, 1995 and recorded on October 25, 1995 in the Office of the Recorder of Deeds in and for New Castle County in Book 2000, Page 285.

2.    All improvements, including but not limited to a hangar owned by Assignor and constructed on the aforesaid land pursuant to the terms of the aforesaid Lease Agreement.

Delaware River and Bay Authority, the current Lessor under the Lease Agreement, has provided its prior written consent to this transaction.

Assignee accepts this Assignment of Assignor's interest in the aforesaid Lease Agreement and Assignor's transfer of ownership of all improvements, including but not limited to a hangar erected on the aforesaid land.

IN WITNESS WHEREOF, Assignor and Assignee hereby set their hands and seals this 3rd day of January, 2006.

*(Signatures follow on next page)*

1

"D"

ASSIGNOR:
Red Eagle Avionics, Inc., a Delaware
Corporation

By: _____

      Donald Mark Ehart, President and
                Secretary

Date of Signature: _/-3-06_____

                    [Corporate Seal]

ASSIGNEE:
Red Eagle Avionics, LLC, a
Delaware Limited Liability Company

By: _____

      David Cannavo, Member

Date of Signature: _1-3-06_____

STATE OF DELAWARE )
                  ) ss.
NEW CASTLE COUNTY )

    Sworn to and subscribed before me, a Notary Public of the State and County
aforesaid, by Donald Mark Ehart, President and Secretary of Red Eagle Avionics,
Inc., a Delaware Corporation, on this 3rd day of January, 2006.

NOTARY PUBLIC
My Commission Expires:   ROBERTA A. SNYDER
                     NOTARY PUBLIC
                  STATE OF DELAWARE
           My Commission Expires Nov. 27 2007

STATE OF DELAWARE )
                  ) ss.
NEW CASTLE COUNTY )

    Sworn to and subscribed before me, a Notary Public of the State and County
aforesaid, by David Cannavo, Member of Red Eagle Avionics, LLC, a Delaware
Limited Liability Company, on this 3rd day of January, 2006.

NOTARY PUBLIC
My Commission Expires:   ROBERTA A. SNYDER
                     NOTARY PUBLIC
                  STATE OF DELAWARE
    2        My Commission Expires Nov. 27 2007

## AGREEMENT

THIS AGREEMENT, made this first day of February 1994, by and between NEW CASTLE COUNTY, a political subdivision of the State of Delaware (hereinafter referred to as "Lessor") and RED EAGLE AVIONICS, INC., a corporation of the State of Delaware (hereinafter referred to as "Lessee").

## W I T N E S S E T H

WHEREAS, Lessor is the owner of property constituting the New Castle County Airport (hereinafter referred to as "Airport"); and

WHEREAS, New Castle County Economic Development Corporation is the authorized agent for Lessor; and

WHEREAS, Lessee desires to lease certain land within the Airport; and

WHEREAS, Lessor and Lessee have agreed upon the terms of a lease for such land.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein the parties hereto agree, as follows:

1. <u>Demised Premises</u>. Lessor shall lease to Lessee, and Lessee shall lease from Lessor, a 0.4696 acre parcel of land at the Airport, as is more particularly described by the property description on Exhibit "A" attached hereto and made a part hereof.

2. <u>Term</u>. The initial term of this Agreement is twenty (20) years beginning on the day and year first above-mentioned. In addition to the initial term, Lessee is hereby granted two (2) renewal options of ten (10) years each. Each option may be exercised by Lessee by mailing written notice to the offices of the New Castle County Economic Development Corporation or such other place or places as may from time-to-time be designated by Lessor, not less than one hundred twenty (120) days prior to the expiration date of the then current term. Cancellation or termination of the initial term, or any applicable option term defeats Lessee's right to exercise any subsequent option(s).

1

3.   Rent.

A.   Lessee agrees to pay to Lessor annual rent in the sum of Eleven Thousand Five Hundred Dollars ($11,500) per acre during the first year of the initial term of this agreement. During the second through twentieth year of the initial term of this Agreement, at the inception of each annual period, the annual rent shall escalate by the percentage increase, on an annualized basis, equal to the most recent U. S. Department of Labor, Bureau of Labor Statistics, Philadelphia Regional Office's Consumer Price Index ("C.P.I.").

B.   Within one hundred and twenty (120) days prior to the commencement of the twentieth (20th) year of the initial term, the Lessor and Lessee each shall select an appraiser and have them determine an annual fair market rental value for the demised premises for the first year of the first option term. If the chosen appraisers cannot reach agreement on an annual fair market rental value for the demised premises within forty-five (45) days of selection, they shall within five (5) business days mutually agree upon a third appraiser, whose determination of an annual fair market rental value shall be final.   The Lessee shall pay, at its sole expense, the initial appraiser it selects and the third appraiser, if one should be necessary. During the second (2nd) through tenth (10th) years of the first option term, at the inception of each annual period, the annual rent shall escalate by the percentage increase equal to the then most recent annualized C.P.I.

C.   The same procedure set forth in Paragraph 3-B shall be followed in order to determine the annual rent for the first year of the second option term.   During the subsequent years of the second option term, at the inception of each annual period, the annual rent shall escalate by the percentage increase equal to the then most recent annualized C.P.I.

D.   Lessee also agrees to serve as a tiedown manager for twenty (20) available tiedown spots on the public aircraft parking ramp, as is more particularly described by the property description on Exhibit "B" attached hereto and made a part hereof.   Lessee further agrees to charge a minimum tiedown rent of Seventy-Five Dollars ($75) a month for each tiedown spot. Lessee will provide Lessor with a monthly report on the number of prior month's tiedown aircraft, with payment to Lessor representing twenty percent (20%) of the monthly gross revenue collected from tied-down aircraft on the public aircraft parking ramp.

4.   Rent Payment.   The rent due hereunder is payable monthly in an amount equal to one-twelfth (1/12) of the rent calculated pursuant to Paragraph 3 of this Agreement, in advance, on the first day of each month during the term of this

2

Agreement. Should this Agreement begin on a day other than the first of the month, the first rent payment shall be apportioned accordingly. Payments made after the fifth day of the month in which due shall be subject to a late fee of five percent (5%) of the total amount outstanding. All payments shall be made to the offices of the New Castle County Economic Development Corporation, or such other place or places as may from time to time be designated by the Lessor. As used in this Agreement, payment is considered to have been made on the date received by Lessor.

5. <u>Additional Fees</u>. Lessee shall pay such fees as specified in Section 3-1 of the New Castle County Code.

6. <u>Use of Premises</u>. Lessee shall use and occupy the Demised Premises for the purpose of operating and maintaining an airplane hangar and related uses. Additionally, Lessee shall operate and maintain public tiedowns for aircraft on a contractual basis with Lessor.

7. <u>Fuel Storage</u>. Lessee shall comply with all applicable federal, state, and local laws and regulations, and all rules of the Airport and the Local Board of Underwriters concerning the storage of petroleum products and the manner in c which the aircraft is fueled.

8. <u>Taxes</u>. Lessee shall pay all local, county, state and federal taxes with regard to demised premises for the duration of this Agreement and any and all renewals or extensions thereof.

9. <u>Net Lease</u>. This Agreement shall be without cost to the Lessor for the maintenance and/or improvement of the demised premises. It shall be the sole responsibility of Lessee to maintain, repair, and operate the entirety of the demised premises, and all improvements and facilities placed thereon, at Lessee's sole cost and expense. Lessee agrees that it shall keep the demised premises from falling out of repair or deteriorating and shall keep the demised premises in a condition comparable to other first class corporate facilities at the Airport.

10. <u>Trash, Garbage, Hazardous Substances, Etc</u>. Lessee shall provide for the complete and proper arrangement and the safe use and adequate sanitary handling and lawful disposal of materials, away from the Airport, of all trash, garbage, hazardous substances, and other refuse caused as a result of the operation of its business. Lessee shall provide and use suitable covered receptacles for all such garbage, trash, hazardous substances and other refuse. Lessee shall abide by all local, county, state and federal regulations which are applicable regarding the use, handling, and disposal of trash, garbage, and hazardous substances.

3

11.   <u>Right of Ingress and Egress</u>.   Lessor grants to Lessee the right of ingress to and egress from the demised premises subject to existing ordinances and regulations and to such other laws, rules, or policies which may hereafter have application at the Airport.

12.   <u>Improvements/Alterations</u>.

(a)   <u>Lessor's Approval</u>.   Lessee shall make no alterations, additions or improvements to the demised premises without the prior written approval of Lessor, which approval shall not be unreasonably withheld.  Any such alteration, addition, or improvement shall be constructed in accordance with all applicable federal, state, and local laws, and ordinances, including the New Castle County Building and Zoning Codes.  Lessee shall be fully responsible for any damage to property or injury to person resulting from alterations, additions or improvements made by it to the demised premises, and shall hold Lessor harmless with respect thereof.   All improvements erected on the demised premises by Lessee shall become the property of Lessor upon the expiration, cancellation or sooner termination of this Agreement.

(b)   <u>Completion Documents</u>.   On the completion date of any alterations, additions, or improvements, the Lessee shall deliver to Lessor each of the following:

(1)   A certificate of completion by the architect who supervised the construction which shall state that all work has been completed in accordance with the approved plans and specifications;

(2)   Any and all certificate(s) of occupancy, and any equivalent permit(s) or certificate(s) which may be required by any and all federal, state, county, and local governmental authorities; and

(3)   A survey of the demised premises, showing the completed structure and showing that there are no encroachments by it on any adjoining premises in compliance with all laws.

(c)   <u>Certificate of Title</u>.   Within thirty (30) days after the completion date, Lessee shall deliver to Lessor the certificate of a duly licensed title company or its agency, currently dated, that the time for the filing of all mechanics', materialmens', and/or similar liens has expired, or, if such is not the case, that a search of the record shows that no liens or lis pendens then encumber the demised premises.   If the latter information is furnished by such title company, or its agency,

4

then, within ninety (90) days thereafter Lessee shall deliver a further certificate of such title company that no liens or lis pendens then encumber the leased property.

(d) <u>Mechanics' Liens</u>. In the event that any mechanics', materialmens', and/or similar liens shall at anytime be filed against the demised premises or any improvements thereof by reason of work, labor, services or materials performed or furnished to Lessee or to anyone holding the demised premises through or under Lessee, Lessee shall forthwith cause the same to be discharged or recorded or bonded to the satisfaction of Lessor. If Lessee shall fail to cause such lien forthwith to be so discharged or bonded after being notified of the filing thereof, then, in addition to any other right or remedy of Lessor, Lessor may discharge the same by paying that amount so that any and all costs and expenses, including reasonable attorneys' fees, incurred by Lessor in procuring the discharge of such lien, shall be due and payable by Lessee to Lessor within fifteen (15) days following Lessor's written demand for such sums.

(e) <u>Reversionary Interest Impairment</u>. All alterations and improvements made by Lessee, shall be at Lessee's sole cost and expense, and shall be made upon the credit of Lessee and Lessee's leasehold interest, and nothing herein contained shall be construed as a consent by the Lessor to any statutory or judgment lien being entered against the Lessor's reversionary fee simple title by reason of Lessee's alterations or improvements.

13. <u>Right to Have Improvements Removed</u>. Upon the termination of this Agreement, should any existing structure have, in the opinion of Lessor, no further practical economic value or utility, Lessor shall, at its sole option, be entitled to have the land demised herein returned to it clear of all improvements above and below ground level; <u>provided, however</u>, that Lessee shall have one hundred eighty (180) days after such termination in which to remove such improvements, and provided that such an occupancy for purposes of removal shall be subject to the last rent rates applicable hereunder. If Lessee fails to so remove said improvements, Lessor may thereafter remove said improvements at Lessee's expense. In the event that the demised premises, including all improvements, are not cleared to ground level, it is understood that said improvements, including, without limitation all remaining trade fixtures, machinery, and equipment shall revert to and become the property of Lessor.

14. <u>Utilities</u>. Lessee shall assume and pay all costs or charges for all utility services furnished to Lessee during the term hereof; <u>provided, however</u>, that Lessee shall have the right, subject to Lessor's approval of design and specifications, to connect to storm and sanitary sewers and water and

5

utility outlets at Lessee's own cost and expense, and Lessee shall pay for any and all service charges incurred therefor. If Lessee uses, operates, or maintains sewage, water, or any other utility service on the demised premises, Lessee shall assume and pay for necessary meters for measuring said service and all charges for providing such service. Where possible, Lessee shall be billed and pay the charge of the utility company directly to the utility company. Lessee will not place structures over sanitary sewers or water mains, and if such be on the demised premises, Lessor shall have the right to enter the demised premises for the purpose of inspecting, repairing, or replacing same. It is also understood that any electrical work performed by Lessee shall conform with any authority having jurisdiction thereof and shall meet with the requirements of the Delmarva Power & Light Company, its successors and assigns. It is further understood that any utilities may be transferred, sold, or assigned by the Lessor to a public or private contractor, in which event that contractor will have the rights of the Lessor with reference to the utility involved.

15. <u>Possession</u>. Lessee agrees that in the event of Lessor's inability to deliver possession of the demised premises on the execution date of this Agreement, Lessor shall not be liable for any damage caused thereby, nor shall this Agreement be deemed void or voidable. In the event that Lessor is unable to deliver possession on the execution date of this Agreement, the commencement date of this Agreement shall be postponed until such date upon which Lessor is able to deliver possession, the rent due hereunder shall be abated proportionately and the expiration date, as well as all other terms, covenants and conditions of this Agreement, shall remain unchanged.

16. <u>Signs</u>. Lessee may, upon the approval of Lessor, erect such sign(s) on the demised premises as shall be necessary to advertise business provided it complies with all applicable federal, state, and local laws and regulations, as well as rules of the Airport. Upon the termination of this Agreement, Lessee shall remove all signs erected by it and repair any damage caused thereby. Should Lessee violate any provision of this paragraph, Lessor may, at Lessee's expense, take whatever action is necessary to remedy the same and collect the expenses and costs thereof in addition to any and all rent due hereunder.

17. <u>Compliance With Laws</u>. Lessee shall comply with all applicable federal, state, and local laws, ordinances, and regulations, and all rules of the Airport and the Local Board of Underwriters concerning the use and occupancy of the demised premises. Lessor shall not permit the conduct of any business, trade, occupation, or other activity on the demised premises which would void or make voidable any policy of insurance held by Lessor thereon.

18. <u>Liability</u>. Lessor, its officers, agents, and employees, shall not be liable for any damage or injury to Lessee, its officers, agents, or employees, or to any third party coming upon the demised premises in connection with Lessee's use of the premises, or for any damage or injury to any goods, chattels, or other property of Lessee, its officers, agents, or employees where due to any cause, except where such cause is the result of the willful negligence of Lessor, its officers, agents or employees.

19. <u>Inspection</u>. Lessor, or its designee, shall have the right to enter the demised premises for the purpose of inspecting and completing such work as Lessor shall deem necessary for the safety or preservation of general Airport operations; <u>provided, however</u>, that such action will not interfere unreasonably with the conduct of Lessee's business.

20. <u>General Liability Insurance</u>. Lessee shall procure general liability insurance with a limit of no less than one million dollars ($1,000,000.00) for each occurrence. The policy shall name Lessor as an insured and shall be carried by insurers licensed to do business in the State of Delaware and of recognized responsibility satisfactory to Lessor. The policy shall expressly waive and bar any claim of subrogation against Lessor. Lessee shall furnish Lessor with evidence that such coverage has been procured and is being maintained. Said policy shall provide sixty (60) day notice of cancellation. Lessee shall notify Lessor in the event of any cancellation or renewal of such policy. Lessee shall notify Lessor in writing, as soon as practicable, of any claim, demand, or action arising out of an occurrence covered hereunder of which Lessee has knowledge.

21. <u>Worker's Compensation Insurance</u>. Lessee shall procure a worker's compensation insurance policy in an amount equal to or exceeding the statutory limits for Delaware and an Occupational Diseases Insurance policy of no less than $100,000/$500,000/$100,000. The policy shall be carried by insurers licensed to do business in the State of Delaware and of recognized responsibility satisfactory to Lessor. The policy shall expressly waive and bar any claim of subrogation against Lessor. Said policy shall provide sixty (60) day notice of cancellation. Lessee shall furnish Lessor with evidence that such coverage has been procured and is being maintained. Lessee shall notify Lessor in the event of any cancellation or renewal of such policy.

22. <u>Automobile Liability Insurance</u>. If Lessee shall own, lease, use or employ company vehicles at or on the demised premises, Lessee shall procure automobile liability insurance with a limit of no less than one million dollars ($1,000,000.00) for each occurrence. The policy shall name Lessor as an insured and shall be carried by insurers licensed to do business in the

7

State of Delaware and of recognized responsibility satisfactory
to Lessor.  The policy shall expressly waive and bar any claim
of subrogation against Lessor.  If applicable, Lessee shall fur-
nish Lessor with evidence that such coverage has been procured
and is being maintained.  Said policy shall provide sixty (60)
day notice of cancellation.  Lessee shall notify Lessor in the
event of any cancellation or renewal of such policy.  Lessee
shall notify Lessor in writing, as soon as practicable, of any
claim, demand, or action arising out of an occurrence covered
hereunder of which Lessee has knowledge.

      23.  <u>Aviation Liability Insurance</u>.  Lessee shall
procure an aviation liability insurance policy with coverage of
not less than one millon dollars ($1,000,000).  The policy shall
name Lessor as an insured and shall be carried by insurers
licensed to do business in the State of Delaware and of recog-
nized responsibility.  Said policy shall provide thirty (30)
days notice of cancellation.  Lessee shall furnish Lessor with
evidence that such coverage has been procured and is being main-
tained.  Lessee shall notify Lessor in the event of any cancel-
lation or renewal of such policy.

      24.  <u>Indemnification</u>.  Lessee, for itself, its succes-
sors and assigns, covenants and agrees to indemnify and hold
harmless Lessor, its officers, agents, employees, or designees,
from any and all damage, injury, claim, or liability arising
from Lessee's use and occupancy of the demised premises, except
where such is due to the willful negligence of Lessor, its of-
ficers, agents, or employees.  It is expressly understood and
agreed that the Lessee is and shall be deemed to be an independ-
ent contractor for purposes of this Agreement, and shall there-
fore be solely responsible to all parties for its respective
acts and/or omissions.

      25.  <u>Cancellation/Termination</u>.  This Agreement shall
be subject to immediate cancellation by Lessor in the event
Lessee shall:

          (a)  be in arrears in the payment of the whole or
any part of any amount due hereunder for a period of thirty (30)
days after receipt of written notice from Lessor or its designee
that such payments are due;

          (b)  be in default in the performance of any
covenant, term or condition of this Agreement and such default
continues for a period of thirty (30) days after receipt from
Lessor, or its designee, of written notice of such default; and

          (c)  file a voluntary petition in bankruptcy or
any petition for relief under any section of the bankruptcy laws
of the United States; make any assignment for the benefit of
creditors;  be the subject of an involuntary petition in

bankruptcy; have appointed a receiver, custodian or trustee for Lessee by any court; or sell any of its interests under any execution process or other legal process as ordered by any court.

In the event of breach of this Agreement by Lessee, but no sooner than ten days following the mailing of written notice to Lessee of such breach, Lessor may, in addition to all other remedies available at law or equity, recover possession of the demised premises and remove Lessee's effects without being deemed guilty of trespass. Notwithstanding the recovery of possession by Lessor as a result of Lessee's breach, Lessee shall remain liable to Lessor for all amounts owing under this Agreement payable to the expiration date of the then current term, or any subsequent term for which Lessee has exercised its option pursuant to Paragraph 2 of this Agreement. Failure of Lessor to recover the demised premises upon the default of Lessee shall not serve to bar or destroy the right of Lessor to recover the demised premises or to otherwise exercise any and all of its rights at law or equity by reason of any subsequent violation of the terms of this Agreement.

26. <u>No Waiver</u>. The failure of Lessor to insist upon the strict performance of any of the terms, conditions and covenants herein, shall not be deemed a waiver of any rights or remedies available to Lessor, and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants herein contained.

27. <u>Eminent Domain</u>. If all or any part of the demised premises shall be taken by any public authority under the power of eminent domain, the term of this Agreement shall cease as to that portion taken, on the date of possession, and any unearned rent paid or credited in advance shall be refunded, and from that day Lessee shall have the right either to cancel this Agreement and declare it null and void, or to continue in possession of the remainder of the demised premises under the terms herein provided, except that the rent shall be reduced in proportion to the portion of the premises taken. Lessee shall notify Lessor within thirty (30) days after receipt of notice of any taking, of its intention to cancel this Agreement; otherwise, the Agreement shall continue in full force and effect on the same terms and conditions herein provided as to the portion of the demised premises not taken. Lessee shall not be entitled to receive any part of any award or awards that may be made to or received by the Lessor.

28. <u>Notice</u>. Any notice required herein shall be given by registered or certified mail, postage prepaid, addressed, if to Lessor, at: New Castle County Economic Development Corporation, First Federal Plaza, Suite 536, 704 King Street, Wilmington, Delaware 19801 or such other place or places as may from time-to-time be designated by Lessor; and if to

9

Lessee, at: Red Eagle Avionics, Inc., 160 Old Churchmans Road, New Castle, Delaware 19720. Notice is considered to have been given upon the date mailed.

29. <u>Holdover Tenancy</u>. In the event that Lessee continues in possession of the demised premises beyond the expiration, cancellation or termination of this Agreement, or any renewals or extensions thereof, without Lessor's consent, such tenancy shall be presumed to be a tenancy from month-to-month and Lessee shall pay rent equal to twice the monthly rent then pertaining plus any other charges then owing, but nothing in this Paragraph shall be construed as consent by Lessor to such possession of the demised premises by Lessee beyond the term of this Agreement.

30. <u>Discrimination</u>. Lessee shall use, occupy, operate, and maintain the demised premises in accordance with all federal, state and local statutes regarding discrimination, and in such capacity neither it, nor any person or organization using or occupying the demised premises, shall discriminate against any person by reason of race, creed, color, religion, sex, age or national origin.

31. <u>Right of Flight</u>. Lessor reserves the right of flight for the passage of aircraft above the surface of the demised premises, together with the right to cause in such airspace such noise as may be inherent in the operation of aircraft now known or hereafter used, and Lessor reserves the right to use said air space for taking off from, landing at, or operating aircraft on said Airport.

32. <u>Instrument of Transfer</u>. This Agreement is subject to the provisions of the "Instrument of Transfer" between the United States of America and the Levy Court of New Castle County, Delaware, dated April 29, 1949, and effective as of October 27, 1947, as the same is of record in the Office of the Recorder of Deeds in Wilmington, Delaware, in Deed Record C, Volume 49, page 75, with respect to the premises herein leased, and subject to the right of the United States of America to repossess the premises under any war powers act that may exist or that may hereafter been acted with reference to property such as is covered by this lease, with no recourse for just compensation from the United States of America for such taking of Lessee's interest in the premises. In the event of such dispossession, Lessee may, at its election, terminate this lease by written notice to Lessor, but if Lessee elects not to terminate, then the rent payable to Lessor shall be abated during the period Lessee is dispossessed, and upon repossession of the property by the Lessor a corresponding extension of the term of the Agreement shall become effective.

10

33.    <u>Federal Aviation Administration Sponsor's As-</u>
<u>surances</u>.  This Agreement is subject to the provisions of Chap-
ter 14, Part 152, Appendix D, of the Code of Federal Regulations
"Assurances" (14 CFR 152D) that are applicable to this activity.
Lessee will not construct, erect, or alter any structure or
other object in the approach areas of the Airport, or allow the growth of any tree, which would constitute an
airport hazard.  In addition, Lessee will not erect or permit
the erection of any permanent structure or facility which would
interfere materially with the use, operation, or future develop-
ment of the Airport, in any portion of a runway approach area in
which the Airport has acquired, or hereafter acquires, property
interests.

34.    <u>Paragraph Headings</u>.  The paragraph headings con-
tained herein are for convenience in reference only and are not
intended to define or limit the scope of any of the provisions
of this Agreement.

35.    <u>Successors and Assigns</u>.   All of the terms,
covenants and conditions of this Agreement shall be binding upon
and shall inure to the benefit of the successors, subtenants and
assigns of the respective parties hereto, except that the option
provisions of Paragraph 2 herein shall not inure to the benefit
of the subtenants and assigns of Lessee.

36.    <u>Integration</u>.  This document, which includes Ex-
hibit "A" and Exhibit "B," comprises the entire Agreement be-
tween the parties hereto relative to the subject matter hereof,
and no earlier agreements, leases or other understandings en-
tered into by either party or its predecessors or assignors in
connection therewith shall be of any force or effect.

37.    <u>Attorney's Fees</u>.  In any action brought by Lessor
for the enforcement of the obligations of the Lessee hereunder,
Lessor shall be entitled to recover reasonable attorney's fees.

38.    <u>Equal Employment Opportunity</u>.   Lessee shall
operate in accordance with all federal, state and local laws
regarding equal employment opportunity and further agrees to
adopt a policy statement regarding equal employment opportunity
and post such statement in a prominent place at the demised
premises.

39.    <u>Laws of Delaware</u>.   This Agreement shall be
governed by the laws of the State of Delaware.

40.    <u>No Assignment/Encumbrance</u>.  Lessee shall not as-
sign, transfer or otherwise encumber all or any portion of its
interest in this Agreement except with the prior written consent
of Lessor, which shall not be unreasonably withheld.  If Lessee
merges into, consolidates with, liquidates or sells all or a

substantial part of its assets to any person, corporation or other organization, such action shall constitute an assignment or transfer for purposes of this Agreement. Any such assignment, transfer or encumbrance, which has been approved in writing by Lessor, shall be subject to all the provisions of this Agreement and shall be only for the uses specified in Paragraph 6 hereof.

IN WITNESS WHEREOF, the parties hereto set their hands and seals caused the day and year first above mentioned.

NEW CASTLE COUNTY

Witness:

By: _____ (SEAL)
Dennis Greenhouse
County Executive

Attest:

RED EAGLE AVIONICS, INC.

By: _____ (SEAL)
Title: _PRESIDENT_

12

EXHIBIT A

EXHIBIT B



# EXHIBIT "E"

# NON-COMPETITION AGREEMENT

THIS NON-COMPETITION AGREEMENT is made this 3rd day of January, 2006, by and between RED EAGLE AVIONICS, LLC, a Delaware limited liability company ("Purchaser") and DONALD MARK EHART and RED EAGLE AVIONICS, INC.,a Delaware Corporation, jointly and severally ("Seller").

## WITNESSETH

WHEREAS, Purchaser purchased the operating assets of Red Eagle Avionics, Inc.;

WHEREAS, the individual Seller is the sole stockholder in Red Eagle Avionics, Inc. and formerly the Manager thereof;

WHEREAS, as part of the consideration for Purchaser purchasing the operating assets of Seller, the parties agreed that Seller would enter into this Non-Competition Agreement;

WHEREAS, the Purchaser intends to operate an aircraft avionics business, installing and repairing avionics in aircrafts, with offices and facilities located at 1 Dales Way, New Castle, Delaware 19720 ("Business"), which is the same business Seller was engaged in prior to Purchaser's purchase of the operating assets of Seller;

WHEREAS, because of the knowledge of the Seller concerning the operations of the Business and the employees of the Purchaser, it is important to the Purchaser that Seller not compete with the Purchaser during the term of this Agreement and for a reasonable period of time thereafter.

NOW, THEREFORE, in consideration of the premises and conditions and the mutual promises, agreements and covenants set forth in this Agreement, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    TERM.   This Agreement is effective immediately and shall continue for a term of ten (10) years.

2.    DISCLOSURE OF INFORMATION.   Seller shall not during or after the term of this Agreement disclose any confidential or proprietary information concerning Purchaser or Purchaser's business to any person, firm, corporation, association or other entity (other than to Purchaser, its officers and

1

"E"

directors) for any reason or purpose whatsoever, nor shall the Seller make use of any such confidential or proprietary information for his own purpose or for the benefit of any person, firm, corporation or other entity, except Purchaser. As used in this Paragraph, the term "confidential or proprietary information" shall mean all information which is known to Purchaser or Seller or to employees, former employees, or others in a confidential relationship with Purchaser and Seller, and relates to matters such as books and records, customer lists, and pricing information, as they may exist from time to time, which Seller now has or may acquire or obtain.

3.    NON-COMPETITION.    Seller hereby acknowledges and recognizes the highly competitive nature of the Business of Purchaser and Seller will not, during the entire term of this Agreement and for a period of ten (10) years thereafter, for any reason whatsoever, (provided that Purchaser is not in default hereunder), (i) directly or indirectly engage in any Competitive Business (as hereinafter defined), whether such engagement shall be as an employer, officer, director, owner, partner or other participant in any Competitive Business, (ii) assist others in engaging in any Competitive Business in the manner described in the foregoing clause (i); (iii) induce employees of Purchaser to terminate their employment with Purchaser or engage in any Competitive Business; or (iv) solicit any former customers or employees of Seller. As used in this Paragraph, the term "Competitive Business" shall mean any aircraft avionics repair and installation business at the New Castle County Airport or within a one hundred fifty (150) mile radius of the New Castle County Airport.

Notwithstanding anything to the contrary stated herein, Seller shall have the right during the term of this Agreement to obtain employment as an avionics technician with another avionics repair and service facility, provided Seller and Purchaser cannot agree on terms for employment of Seller by Purchaser.

In the event Purchaser engages in an event of default under the Promissory Note of even date hereof in the amount of $1,200,000.00, of which Purchaser is a Maker, resulting in the acceleration of the debt, Seller shall be excused from performance under this agreement.

4.    GENERAL PROVISIONS.

(a)    Enforceability.    It is the desire and intent of the parties hereto that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, if any particular provision of this Employment Agreement shall be adjudicated to be invalid or unenforceable, such provision shall be deemed amended to delete therefrom the portion thus adjudicated to be invalid or unenforceable, such deletion to apply only with respect to the operation of such

2

provision in the particular jurisdiction in which such adjudication is made.

(b)    Notices.    All notices or other communications which are required or permitted hereunder shall be in writing and deemed sufficient if delivered personally or sent by First Class United States Mail, registered or certified, postage prepaid, return receipt requested, addressed as follows:

If to Purchaser:

1 Dale's Way
New Castle, Delaware 19720

If to Seller:

795 Union Church Road
Townsend, Delaware 19734

or to such other address as the party to whom notice is to be given may have furnished to the other party in writing in accordance herewith.

(c)    Waiver of Breach.    The waiver by either party hereto of a breach of any provision of this Agreement by the other party hereto must be in writing and shall not operate or be construed as a waiver of any subsequent breach by such other party.

(d)    Headings.    The Paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(e)    Governing Law.    This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Delaware.

(f)    Authorship.    Questions of interpretation shall not be construed for or against any party based on the consideration of authorship. .

(g)    Binding Effect.    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.

(h)    Time of the Essence.    Time is of the essence of this Agreement.

(i)    Consent to Jurisdiction.    Each of the parties hereto irrevocably consents to the exclusive jurisdiction of the State and Federal Courts

3

located in the State of Delaware in any and all actions between or among any of the parties hereto, whether arising hereunder or otherwise.

(j)    Service of Process.    Each of the parties hereto irrevocably consents to service of process by first class United States mail, registered or certified, return receipt requested, postage prepaid, to the address at which such party is to receive notice in accordance with this Agreement.

(k)    Entire Agreement.    This Agreement contains all the terms, covenants and representations which are intended to be binding upon the parties. No representation, condition or understanding not expressed herein shall be binding upon the parties, unless subsequent to the date hereto and signed by both Purchaser and Seller.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

PURCHASER:
Red Eagle Avionics, LLC, a
Delaware limited liability company

By: _____
David Cannavo, Member

SELLER:

_____ (SEAL)
Donald Mark Ehart, Individually

Red Eagle Avionics, Inc.,
a Delaware corporation

By: _____
Donald Mark Ehart, President

Attest: _____
Secretary

[Corporate Seal]

4

# EXHIBIT "F"

**20060104-0001130**
Pages: 9    F: $107.00
01/04/06 02:04:48 PM
T20060000710
Michael E. Kozikowski
New Castle Recorder    MTG

Tax Parcel No. 10-018.00-006/L0032

Prepared by and Return to:

Roeberg, Moore & Friedman, P.A.
910 Gilpin Avenue
Wilmington, Delaware 19806

## MORTGAGE AND SECURITY AGREEMENT

THIS Mortgage and Security Agreement is made this 3rd day of January, 2006 between RED EAGLE AVIONICS, LLC, a Delaware limited liability company (hereinafter called Mortgagor),

AND

RED EAGLE AVIONICS, INC., a Delaware corporation (hereinafter called Mortgagee).

**WHEREAS,** Mortgagor, in and by a certain obligation duly executed, bearing even date herewith (the "Note"), stands bound unto Mortgagee in the sum of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) lawful money of the United States of America, to be repaid in accordance with the terms of the Note, which terms are herein incorporated by reference. The indebtedness secured hereby is subject to acceleration in the event of default as the same is more particularly described in the Note. Mortgagee shall have the right to prepay the Note hereby secured, in whole or in part, without payment of premium or penalty at any time.

**WHEREAS,** Mortgagor desires to secure the Note, with interest thereon.

**NOW THIS INDENTURE WITNESSETH,** that the Mortgagor for and in consideration of the aforesaid debt and for the better securing payment of the same, with interest, costs and counsel fees, does hereby grant and convey unto Mortgagee, its administrators, successors or assigns, a first mortgage lien and first lien security interest on and in a certain leasehold estate as Lessee in 0.4696± acres of land at the New Castle County Airport, New Castle County Delaware, now held by Mortgagor. Said leasehold estate was originally created by that certain Lease Agreement dated February 1, 1994 between New Castle County, as the original Lessor and Red Eagle Avionics, Inc., as the original Lessee (the "Lease"). On October 25th 1995 New Castle County assigned all of its rights in the Lease to the Delaware River and Bay Authority ("DRBA") pursuant to a certain Assignment and

1

9    "F"

Assumption of Leases recorded in the Office of the Recorder of Deeds in and for New Castle County, Delaware on October 25th 1995 in Book 2000, page 285. Prior to the granting of this Mortgage and Security Agreement, Red Eagle Avionics, Inc. assigned to Mortgagor, with the prior written consent of DRBA, all Lessee's rights in the Lease by Assignment of Leasehold Interest instrument dated the 3rd day of January, 2006 and intended to be recorded in the aforesaid office of the Recorder of Deeds.

Notwithstanding anything to the contrary stated herein, the fee simple interest of New Castle County and the ground leasehold interest of DRBA in the premises shall be and remain superior to the lien created by this instrument.

The leasehold interest covers the following described property:

All those certain premises located at the New Castle County Airport, Wilmington, Delaware, including hangar and improvements, having an address of 1 Dales Way, New Castle, Delaware 19720.

**TOGETHER** with the rents, issues and profits thereof, subject however, to the right, power and authority hereinafter given to Mortgagor to collect and apply such rents, issues and profits prior to any default hereunder, including all buildings and improvements now erected thereon, and all appurtenances, fixtures, taxiways, roads, fences, and other items attaching to the real estate, all of which items now installed, being hereby declared to be for all purposes of this Mortgage and Security Agreement a part of the realty, and all the estate, interest or demand on the aforesaid property, the specific enumerations herein not excluding the general.

**PROVIDED FURTHER** the lien of this Mortgage and security interest hereby created extends to the leasehold interest described above and to all buildings, improvements, fixtures, etc. presently erected thereon and owned by Mortgagor as of the date hereof. If it is determined in any subsequent legal proceeding that this Mortgage lien is invalid because it does not extend as written to additional buildings, improvements, fixtures, etc. made, erected, constructed or acquired under and pursuant to the aforesaid leasehold interest herein mortgaged, then this Mortgage lien shall be deemed to extend to all buildings, improvements, fixtures, etc. erected on the leased premises now existing or hereinafter made, erected, constructed or acquired, and this Mortgage instrument shall be deemed automatically amended to provide for the same.

**THIS MORTGAGE AND SECURITY AGREEMENT** is a purchase money mortgage and purchase money security interest.

To protect the security of this Mortgage and Security Agreement, Mortgagor agrees:

2

1.     To perform and comply with fully and at all times all agreements, covenants, terms, and conditions imposed on or assumed by it as Lessee under the Lease, and that if Mortgagor shall fail to do so, Mortgagee may, but shall not be obligated to, take any action Mortgagee deems necessary or desirable to prevent or to cure any default by Mortgagor in the performance of or compliance with any of Mortgagor's covenants or obligations under the Lease. On receipt by Mortgagee from the Lessor under such Lease, of any written notice of default by the Lessee thereunder, Mortgagee may rely thereon and take any action as aforesaid to cure such default even though the existence of such default or the nature thereof is questioned or denied by Mortgagor or by any party on behalf of Mortgagor. Mortgagor hereby expressly grants to Mortgagee, and agrees that Mortgagee shall have, the absolute and immediate right to enter in and on the premises to such extent and as often as Mortgagee, in its sole discretion, deems necessary or desirable in order to prevent or to cure any such default by Mortgagor. Mortgagee may pay such reasonable sums of money as Mortgagee deems necessary for any such purpose, and Mortgagor hereby agrees to pay to Mortgagee, immediately and without demand, all such sums so paid by Mortgagee, together with interest thereon from the date of each such payment at the rate of interest stated in the Note hereby secured. All sums so paid and expended by Mortgagee and the interest thereon shall be added to and be secured by the lien hereof.

2.     That Mortgagor will not surrender its leasehold estate and interest or terminate or cancel the Lease and that it will not without the express written consent of Mortgagee, which consent shall not be unreasonably refused, modify, change, supplement, alter, or amend the Lease either orally or in writing, and any such termination, cancellation, modification, change, supplement, alternation, or amendment of such Lease without the proper written consent thereto by Mortgagee shall be void and of no force and effect, provided that Mortgagor shall be able to enter into an agreement with the Lessor modifying or amending the Lease under terms which do not diminish the collateral of this Mortgage and Security Agreement. As further security to Mortgagee, at the request of Mortgagee, Mortgagor shall deposit with Mortgagee, Lessee's original of the Lease and all amendments thereto or a certified copy thereof, to be retained by Mortgagee until all indebtedness secured hereby is fully paid.

3.     That no release or forbearance of Mortgagor's obligations under the Lease, pursuant to the Lease or otherwise, shall release Mortgagor from any of its obligations hereunder, including its obligations with respect to the payment of rent as provided for in the Lease and the performance of all of the terms, provisions, covenants, conditions, and agreements contained in the Lease, to be kept, performed, and complied with by the Lessee therein.

4.     That unless Mortgagee shall otherwise expressly consent in writing, the fee title to the property demised by the Lease and the leasehold estate

3

shall not merge but shall always remain separate and distinct, notwithstanding the union of such estates either in the Lessor or in the Lessee, or in a third party by purchase or otherwise.

5.    Mortgagor shall perform each obligation of Mortgagor under the terms of the Lease relating to the demise of such property, to keep such property in good condition and repair, not to remove or demolish any improvement thereon, to complete or restore promptly in good and workmanlike manner any improvement that may be constructed, damaged, or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws affecting such property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer, or permit any act on such property in violation of law, and to do all other acts that from the character or use of such property may be reasonably necessary, the specific enumerations herein not excluding the general.

6.    Mortgagor shall provide, maintain, and deliver to Mortgagee, when requested, evidence of insurance on the leasehold improvements covering all physical risks of damage to the leasehold improvements, including but not limited to fire and comprehensive physical damage insurance in an amount equal to the replacement value of all improvements to the mortgaged premises, with insurance loss payable to Mortgagee, Mortgagor and any prior lien holders as each party's interest may appear. In the event of fire or other casualty, Mortgagor, if it so chooses, provided Mortgagor is not in default, shall have the right to completely repair or replace the damaged collateral, provided the amount of insurance proceeds, together with any other funds available to Mortgagor at the time of the loss, is sufficient to pay for the entire costs of repair or replacement. Otherwise, the amount of any such insurance proceeds available to Mortgagee after taking into consideration any prior liens shall be applied by Mortgagee on any indebtedness secured hereby in such order as Mortgagee determines, or at the option of Mortgagee the entire amount so collected or any part thereof may be released to Mortgagor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the property covered thereby at any Mortgagee's sale held hereunder, or at any foreclosure sale of such property.

7.    Mortgagor shall appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Mortgagee, and to pay all expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in such action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this mortgage.

8.    Mortgagor shall pay at least 5 days before delinquency all taxes

or assessments affecting the property, and to pay when due all encumbrances, charges, and liens, with interest, on the property or any part thereof that appear to be prior or superior hereto, and to pay all costs, fees, and expenses of recording this Mortgage and Security Agreement.

9.    Mortgagee agrees that by Mortgagee accepting payment of any sum secured hereby after its due date, Mortgagee does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

10.    That Mortgagor hereby gives to and confers on Mortgagee the right, power, and authority, during the continuance of this Mortgage and Security Agreement, to collect the rents, issues, and profits of such property, reserving unto Mortgagor the right, prior to any default by Mortgagor in payment of any indebtedness secured hereby or in the performance of any agreement hereunder, to collect and retain such rents, issues, and profits as they become due and payable. On any such default, Mortgagee may at any time upon reasonable notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter on and take possession of such property or any part thereof, in its own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less expenses of operation and collection, including reasonable attorneys' fees, on any indebtedness secured hereby, and in such order as Mortgagee may determine. The entering on and taking possession of such property, the collection of such rents, issues, and profits, and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11.    That should Mortgagor, without the consent in writing of Mortgagee, voluntarily sell, transfer or convey its interest in the Lease or the property or any part thereof, or any interest therein, or if by operation of law, it is sold, transferred, or conveyed, Mortgagee may, at its option, declare all sums secured hereby immediately due and payable. Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions.

12.    That this Mortgage applies to, inures to the benefit of and binds all parties thereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term Mortgagee shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Mortgagee herein.

13.    In this mortgage, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number

includes the plural.

**PROVIDED, ALWAYS,** nevertheless that if the Mortgagor or its successors shall and do well and truly pay or cause to be paid, unto Mortgagee, its successors or assigns, the aforesaid debt or principal sum on the day hereinbefore mentioned and appointed for payment of the same together with interest as aforesaid, and shall pay all taxes of the current year and any municipal claims and any other charges which may be legally assessed against the said mortgaged premises when the same are due and payable and shall at the request of Mortgagee produce receipts for the payment thereof within thirty days after such payment, and shall keep and maintain said fire, flood and other hazard insurance satisfactory to and for the benefit of Mortgagee, its successors or assigns, as aforesaid, and shall discharge its obligations without any fraud or further delay, then and from thenceforth as well, this present Indenture, and the Mortgage lien and security interest hereby granted, and the said recited obligation shall cease, determine and become void and of no effect.

**PROVIDED, ALSO,** that it shall and may be lawful for Mortgagee or its successors, in case of default after notice as provided in the accompanying Note which results in acceleration of the indebtedness for which this Mortgage and Security Agreement is given as security or in the maintenance of said fire and other hazard insurance satisfactory to and for the benefit of Mortgagee, its successors or assigns, as aforesaid, or in case there shall be default in the payment of taxes and production to the said Mortgagee, its successors or assigns, in each year, of such receipts for such taxes of the current year assessed upon the mortgaged premises on or before thirty (30) days after the same shall have been paid, or in the payment of any municipal claims and any other charges which may be legally assessed against said premises aforesaid and the production of receipts for the payment thereof, on or before thirty days after the same shall have been paid as aforesaid or in the performance of Mortgagee's obligations under the Note, to (1) sue out and issue forthwith a writ of Scire Facias on this Mortgage and Security Agreement and to proceed thereon to judgment, execution and sale for the collection and recovery of the unpaid balance of said principal debt and interest accrued thereon, together with fees, costs, damages, and expenses of such proceedings; without further stay, any law, usage or custom to the contrary notwithstanding; and (2) exercise any and all remedies available to Mortgagee as a secured party whose debt is in default, pursuant to the Delaware Uniform Commercial Code – Secured Transactions 6 <u>Del.C.</u> §9-101, et. seq., as such laws may be changed or amended from time to time. Provided further, that any nonpayment default described above shall require written notice to Mortgagor and a 20-day period to cure before any such default remedies are available.

**AND** it is further mutually covenanted and agreed that Mortgagor shall keep all the buildings, fences and other improvements now or hereafter erected on the

6

above-mentioned and described lands and premises in good order and repair to the reasonable satisfaction of Mortgagee and not to do or permit waste.

AND it is further mutually covenanted and agreed that the mailing of a written notice and demand by depositing in any post office, station or letterbox, enclosed in a postpaid envelope, registered or certified mail, return receipt requested, addressed to the Mortgagor and directed to said Mortgagor, shall be sufficient notice and demand in any case arising under this instrument and required by the provisions thereof or the requirements of the law.

AND it is further mutually covenanted and agreed by the said parties that in default of the payment of all or any taxes, charges and assessments which may be imposed by law upon the mortgaged premises, it shall be lawful for Mortgagee, its administrators, successors or assigns to pay the amount of any such tax, charge or assessment with any expenses attending the same; and any amount so paid, Mortgagor shall pay on demand with interest thereon, and the same shall be a lien on the said premises and be secured by the said bond and by these presents, and the amount hereby secured if not then due, shall thereupon, if Mortgagee so elects, become due and payable forthwith.

AND it is further mutually covenanted and agreed by said parties that upon Mortgagor's failure to maintain fire and other hazard insurance written by a Delaware licensed insurer in an amount equal to the replacement value of all improvements to the mortgaged premises. If Mortgagor fails to provide such insurance, the Mortgagee may, at its option, procure such insurance, and Mortgagor shall, within ten (10) days of demand, pay to Mortgagee all sums which it may have so paid or become obligated for, with interest thereon, from the date the same is paid at the rate provided in the Note, and for the payment thereof this Mortgage and Security Agreement shall stand as security in like manner and effect as for the payment of said debt. In case Mortgagee elects to advance insurance premiums, the receipts of an official of the insurance company in which such insurance is placed shall as to insurance premiums be conclusive evidence of the amount of the fact of payment thereof.

AND it is hereby expressly provided and agreed, that if any action, suit, matter or proceeding be brought for the enforcement of this Mortgage and Security Agreement, and if the plaintiff or lien holder in said action, suit or proceeding shall recover judgment in any sum or be entitled to the proceeds of any sale, such plaintiff or lien holder shall also recover reasonable counsel fees, which said counsel fees shall be entered, allowed and paid as a part of the decree, judgment or debt in said action, suit or proceeding.

AND the said Mortgagor further covenants that, except in connection with prior mortgage liens hereon, it will not assign the rent or any part of the rent of said

7

premises, nor demolish or remove any building or any fixtures or equipment installed herein, without the written consent of Mortgagee, its administrators, successors or assigns.

PROVIDED, FURTHER, that if the above-described premises or any part thereof be condemned under any power of eminent domain and acquired for any public or quasi-public use, the damages, proceeds and consideration for such acquisition to the extent of the indebtedness secured by this Mortgage and hereby remaining unpaid, are hereby assigned by Mortgagor to Mortgagee, its heirs, executors, administrators, successors or assigns, to be applied on account of the first maturing installment of such indebtedness.

In the event of acceleration of the indebtedness for which this Mortgage and Security Agreement is given as security, Mortgagor assigns unto Mortgagee all of its right, title and interest in and to the rents and profits of the mortgaged premises. In such event, Mortgagee shall be entitled to possession of the mortgaged premises for purposes of obtaining the rents and profits and applying said rents and profits to the care and preservation of the mortgaged premises with any surplus being first applied to Mortgagee's expenses in operating the mortgaged premises and then to payment of interest and principal on the indebtedness secured hereby. Mortgagee shall be entitled to enforce such right if it so chooses by seeking the appointment of a receiver for the mortgaged premises.

IN WITNESS WHEREOF, the said RED EAGLE AVIONICS, LLC, a Delaware limited liability company, by its Member, David Cannavo, has executed this instrument the day and year first above written.

Signed, Sealed and Delivered
in the presence of:

RED EAGLE AVIONICS, LLC,
a Delaware limited liability company

_David Roeberg_
Witness

By: _David Cannavo_ (SEAL)
David Cannavo, Member

STATE OF DELAWARE       )
                        ) ss.
NEW CASTLE COUNTY       )

THIS INSTRUMENT was acknowledged before me on January 3, 2006, by

8

David Cannavo, Member of Red Eagle Avionics, LLC, a Delaware limited liability company.

_____
Notary Public
My commission expires:

ROBERTA A. SNYDER
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Nov. 27 2007

9

**RECORDER'S RECEIPT**

```
20060104-0001129
Pages: 16    F: $184.00
01/04/06 02:04:29 PM
T20060000710
Michael E. Kozikowski
New Castle Recorder    MISC
```

| | |
|---|---|
| ASSIGNMENT OF LEASE AGREEMENT AND ) TRANSFER OF OWNERSHIP OF IMPROVEMENTS ) | DATED:  January 3, 2006 |

ASSIGNMENT OF LEASE AGREEMENT AND ) 
TRANSFER OF OWNERSHIP OF IMPROVEMENTS ) DATED:     January 3, 2006
)
Red Eagle Avionics, Inc., a Delaware Corporation ) ACK:     January 3, 2006
)
- T O - )
)
Red Eagle Avionics, LLC, a Delaware Limited )
Liability Company )

```
20060104-0001130
Pages: 9    F: $107.00
01/04/06 02:04:48 PM
T20060000710
Michael E. Kozikowski
New Castle Recorder    MTG
```

MORTGAGE AND SECURITY AGREEMENT ) DATED:     January 3, 2006
)
Red Eagle Avionics, LLC, a Delaware Limited ) ACK:     January 3, 2006
Liability Company, )
)
- T O - ) AMOUNT:     $1,200,000.00
)
Red Eagle Avionics, Inc. a Delaware Corporation )

```
20060104-0001131
Pages: 2    F: $28.00
01/04/06 02:05:02 PM
T20060000710
Michael E. Kozikowski
New Castle Recorder    UCC
```

FINANCING STATEMENT - FORM UCC-1 )
)
Debtors: )
)
    Red Eagle Avionics, LLC, a Delaware )
    Limited Liability Company )
)
Secured Party: )
)
    Red Eagle Avionics, Inc., a Delaware )
    Corporation )

**PROPERTY:** 1 Dale's Way, New Castle, Delaware 19720 (Parcel Number: 10-018.00-006/L0082)

THIS IS TO CERTIFY that the above indentures were recorded in this office at _____ M., the

_____ day of _____, A.D. 20___, and the same now remains of record.

*Michael E. Kozikowski*

**RECORDER OF DEEDS**

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

|||||||||||||||||||||||||||||||
**20060104-0001131**
Pages: 2   F: $28.00
01/04/06 02:05:02 PM
T20050000710
Michael E. Kozikowski
New Castle Recorder   UCC

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> David Roeberg, Esquire
> Roeberg, Moore & Friedman, P.A.
> 910 Gilpin Avenue
> Wilmington, Delaware 19806

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Red Eagle Avionics, LLC** | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **1 Dale's Way** | **New Castle** | **DE** | **19720** | **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **LLC** | 1f. JURISDICTION OF ORGANIZATION **Delaware** | 1g. ORGANIZATIONAL ID #, if any **4085578**  ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Red Eagle Avionics, Inc., a Delaware Corporation** | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **795 Union Church Road** | **Townsend** | **DE** | **19734** | **USA** |

4. This FINANCING STATEMENT covers the following collateral:

Debtor's interest, as successor in interest of Red Eagle Avionics, Inc., a Delaware Corporation, Lessee in a certain ground lease for 0.4696+/- acres of land located at 1 Dale's Way, New Castle County Airport, New Castle, Delaware 19720, including leasehold improvements, pursuant to a Lease Agreement dated February 1, 1994 with Delaware River and Bay Authority, as successor in interest of New Castle County, Lessor.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum  [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| New Castle County Recorder of Deeds | | | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)   International Association of Commercial Administrators (IACA)

2

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR **Red Eagle Avionics, LLC**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only _one_ name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S _or_ ☐ ASSIGNOR S/P'S   NAME - insert only _one_ name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☑ fixture filing.

14. Description of real estate:

**1 Dale's Way**
**New Castle County Airport**
**New Castle, Delaware 19720**

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**New Castle County, Delaware**

16. Additional collateral description:

17. Check _only_ if applicable and check _only_ one box.

Debtor is a ☐ Trust  or  ☐ Trustee acting with respect to property held in trust  or  ☐ Decedent's Estate

18. Check _only_ if applicable and check _only_ one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

███████
███████
███████
███████

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

David Roeberg, Esquire
Roeberg, Moore & Friedman, P.A.
910 Gilpin Avenue
Wilmington, Delaware 19806

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 08:00 AM 01/06/2006*
*INITIAL FILING NUM: 6013677 0*
*AMENMENT    NUMBER: 0000000*
*SRV: 060018621*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Red Eagle Avionics, LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1 Dale's Way | New Castle | DE | 19720 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR LLC | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION Delaware | 1g. ORGANIZATIONAL ID #, if any 4085578 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Red Eagle Avionics, Inc., a Delaware Corporation | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 795 Union Church Road | Townsend | DE | 19734 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Debtor's interest, as successor in interest of Red Eagle Avionics, Inc., a Delaware Corporation, Lessee in a certain ground lease for 0.4696+/- acres of land located at 1 Dale's Way, New Castle County Airport, New Castle, Delaware 19720, including leasehold improvements, pursuant to a Lease Agreement dated February 1, 1994 with Delaware River and Bay Authority, as successor in interest of New Castle County, Lessor.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

Delaware Secretary of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

International Association of Commercial Administrators (IACA)

# EXHIBIT "G"

Dated this day of 3rd day of January, 2006

**$1,200,000.00**

# PROMISSORY NOTE

FOR VALUE RECEIVED, the Undersigned, Red Eagle Avionics, LLC, a Delaware Limited Liability Company ("Maker"), intending to be legally bound promises to pay to the order of Red Eagle Avionics, Inc., a Delaware Corporation ("Payee"), the principal sum of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00), with interest at 8.5% per annum until paid. Monthly payments until default shall be $10,413.88, commencing one month from the date hereof and continuing each and every month thereafter until January 3, 2026, at which time the final payment shall be $10,413.06. All outstanding principal and accrued interest unless previously paid in full shall be due and payable in full on January 3, 2026, twenty (20) years from the date hereof.

## I.    SECURITY

As security for this Note, Maker has executed and delivered to Payee a Mortgage and Security Agreement of even date hereof granting a first mortgage lien and security interest in accordance with its terms in a certain existing leasehold interest or interests for 0.4696± acres of land, together with a hangar and improvements erected thereon, located at 1 Dale's Way, New Castle County Airport, New Castle, Delaware 19720. The terms of said Mortgage and Security Agreement are incorporated herein by reference and this Promissory Note shall be subject to all the terms and conditions thereof.

## II.    PREPAYMENT

Payment, in whole or in part, of the principal or interest, or both, shall be permitted at any time and from time to time without penalty. Partial prepayment shall not excuse or postpone the making of regular successive installments of principal and/or interest until the entire unpaid balance of principal due hereunder, and all accrued and unpaid interest thereon, is paid in full.

## III.    LATE PAYMENT CHARGE

Each and every payment obligation shall be subject to a late payment fee of five percent (5%) of the amount of such payment comprising principal and interest for any payment made more than twenty (20) days late.

1

The invalidity of any portion of this Note shall not affect the remaining portions, or any part thereof, and in the case of any such invalidity, this Note is construed as if such portion had not been inserted. The Undersigned, if more than one, are jointly and severally liable and the term "Undersigned" whenever used means each of the Undersigned. All of the terms and provisions inure to and are binding upon the heirs, executors, administrators, successors, representatives, receivers, trustees and assigns of the parties.

All terms, obligations and provisions are governed by and construed in accordance with the laws of the State of Delaware.

IN WITNESS WHEREOF, the parties, intending to be legally bound hereby, have executed this Note the day and year first above written.

**MAKER:**
RED EAGLE AVIONICS, LLC, a
Delaware limited liability company

_S/David Roebers_
Witness

By _S/ David Cannavo_ (SEAL)
David Cannavo, Member

The Undersigned hereby in consideration of the aforesaid debt hereby irrevocably and unconditionally and as surety for Maker, guarantees payment to Payee under this Promissory Note.

_S/David Roebers_
Witness

_S/ April Cannavo_ (SEAL)
DAVID CANNAVO, Individually

DATED: 1/3/06

3

# EXHIBIT "H"

OMB NO. 2502-0265

| | B. TYPE OF LOAN: |
|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER:  RB 1955  7. LOAN NUMBER: |
| | 8. MORTGAGE INS CASE NUMBER: |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*   1.0   3/06   (RED EAGLE.PFD/RB 1955/14)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Red Eagle Avionics, LLC, a Delaware Limited Liability Company 1 Dale's Way, New Castle, DE 19720 | Red Eagle Avionics, Inc. a Delaware Corporation 1 Dale's Way, New Castle, DE 19720 | |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:     51-0226266 | I. SETTLEMENT DATE: |
|---|---|---|
| Sale of Business Assets 1 Dale's Way, New Castle, DE 19720 New Castle County, Delaware | Roeberg, Moore & Friedman, P.A.  PLACE OF SETTLEMENT  910 Gilpin Avenue  Wilmington, Delaware 19806 | January 3, 2006 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 2,200,000.00 | 401. Contract Sales Price | 2,200,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 25,340.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes        to | | 406. City/Town Taxes        to | |
| 107. County Taxes           to | | 407. County Taxes           to | |
| 108. School Taxes           to | | 408. School Taxes           to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 2,225,340.00 | **420. GROSS AMOUNT DUE TO SELLER** | 2,200,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 1,100,000.00 | 502. Settlement Charges to Seller (Line 1400) | 89.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage to Wachovia Bank of Delaw | 445,905.21 |
| 205. | | 505. Payoff of second Mortgage to SMAL Loan | |
| 206. | | 506. | |
| 207. | | 507. Payoff of SBA Loan to Small Business Administratio | 30,583.56 |
| 208. Note to Seller | 1,200,000.00 | 508. Note to Seller | 1,200,000.00 |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes        to | | 510. City/Town Taxes        to | |
| 211. County Taxes           to | | 511. County Taxes           to | |
| 212. School Taxes           to | | 512. School Taxes           to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 2,300,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 1,676,577.77 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 2,225,340.00 | 601. Gross Amount Due To Seller (Line 420) | 2,200,000.00 |
| 302. Less Amount Paid By/For Borrower (Line 220) | (2,300,000.00) | 602. Less Reductions Due Seller (Line 520) | (1,676,577.77) |
| **303. CASH (  FROM ) ( X TO ) BORROWER** | 74,660.00 | **603. CASH ( X TO ) (  FROM ) SELLER** | 523,422.23 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Borrower   Red Eagle Avionics, LLC, a                    Seller   Red Eagle Avionics, Inc.

BY: _David Cannon_                                         BY: _____

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.   _____
Roeberg, Moore & Friedman, P.A.
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

"H"

Page 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price     $     @     % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $     to | | | |
| 702. $     to | | | |
| 703. Commission Paid at Settlement | | | |
| 704.     to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee     %     to | | | |
| 802. Loan Discount     %     to | | | |
| 803. Appraisal Fee     to | | | |
| 804. Credit Report     to | | | |
| 805. Lender's Inspection Fee     to | | | |
| 806. Mortgage Ins. App. Fee     to | | | |
| 807. Assumption Fee     to | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From  01/03/06  to  02/01/06  @  $     /day  (  29 days     %) | | | |
| 902. Mortgage Insurance Premium for     months to | | | |
| 903. Hazard Insurance Premium for   1.0  years  to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance     months @ $     per month | | | |
| 1002. Mortgage Insurance     months @ $     per month | | | |
| 1003. City/Town Taxes     months @ $     per month | | | |
| 1004. County Taxes     months @ $     per month | | | |
| 1005. School Taxes     months @ $     per month | | | |
| 1006.     months @ $     per month | | | |
| 1007.     months @ $     per month | | | |
| 1008.     months @ $     per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee     to | | | |
| 1102. Abstract or Title Search     to  Old Republic National Title Insurance Company | | 105.00 | |
| 1103. UCC Lien Search     to  Roeberg, Moore & Friedman, P.A.     CC/Agents & Corps. | | 76.00 | |
| 1104. Title Insurance Binder     to | | | |
| 1105. Wimr Trst Co Wire Transfer Fee     to  Roeberg, Moore & Friedman, P.A. | | 8.00 | |
| 1106. Photocopy, Postage & FedEx Fee     to  Roeberg, Moore & Friedman, P.A. | | 150.00 | 50.00 |
| 1107. Attorney's Fees     to  Roeberg, Moore & Friedman, P.A. | | 24,500.00 | |
| (includes above item numbers:1101 & 1103     ) | | | |
| 1108. Title Insurance     to | | | |
| (includes above item numbers:     ) | | | |
| 1109. Lender's Coverage     $ | | | |
| 1110. Owner's Coverage     $ | | | |
| 1111.     Roeberg, Moore & Friedman, P.A. | | | |
| 1112.     Roeberg, Moore & Friedman, P.A. | | | |
| 1113. Certificate of Good Standing     to  Roeberg, Moore & Friedman, P.A.     Div. of Corp. | | | 20.00 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $     ; Mortgage $     107.00     Releases $ | | 107.00 | |
| 1202. City/County Tax/Stamps: Deed     ; Mortgage | | | |
| 1203. State Tax/Stamps:     Deed     ; Mortgage | | | |
| 1204. Assignment of Leasehold Int.     to  NCC Recorder of Deeds | | 184.00 | |
| 1205. UCC Filing fee w/Sec.of State     to  Delaware Secretary of State | | 50.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey     to | | | |
| 1302. Pest Inspection     to | | | |
| 1303. DE Sec. of State LLC Fee     to  Roeberg, Moore & Friedman, P.A.     LLC | | 140.00 | |
| 1304. Mortgage Satis. recording fee     to  NCC Recorder of Deeds | | | 19.00 |
| 1305. UCC recording fee w/Rec. Deeds     to  NCC Recorder of Deeds | | 20.00 | |
| **1400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K)** | | 25,340.00 | 89.00 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

The law firm of Roeberg, Moore & Friedman, P.A. assumes no responsibility for the accuracy of information supplied by third parties as to taxes, special assessments, balances on existing mortgages, or other liens and encumbrances, or figures supplied by lenders. Settlement is made subject to further adjustments among all parties in the event of an error in calculation, omissions, or misinformation supplied by third parties.

Substitute Form 1099-S

SELLER'S TAX ID SOLICITATION: THE INFORMATION IN BLOCKS E, G, H, I AND ON LINES 401, 406, 407 and 408 IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION MAY BE IMPOSED ON YOU IF THIS ITEM IS REQUIRED TO BE REPORTED AND THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED. YOU ARE REQUIRED BY LAW TO PROVIDE THE SETTLEMENT AGENT WITH YOUR CORRECT TAXPAYER IDENTIFICATION NUMBER. IF YOU DO NOT PROVIDE THE SETTLEMENT AGENT WITH YOUR CORRECT TAXPAYER IDENTIFICATION NUMBER, YOU MAY BE SUBJECT TO CIVIL OR CRIMINAL PENALTIES IMPOSED BY LAW.

For sales or exchanges of certain real estate, the person responsible for closing a real estate transaction must report the real estate proceeds to the Internal Revenue Service and must furnish this statement to you. To determine if you have to report the sale or exchange of your main home on your tax return, see the 2006 Schedule D (Form 1040) Instructions. If the real estate was not your main home, report the transaction on Form 4797, Sales of Business Property, Form 6252, Installment Sale Income, and/or Schedule D (Form 1040), Capital Gains and Losses. You may have to recapture (pay back) all or part of a Federal mortgage subsidy if all the following apply: a) You received a loan provided from the proceeds of a qualified mortgage bond or you received a mortgage credit certificate; b) Your original mortgage loan was provided after 1990; and; c) You sold or disposed of your home at a gain during the first 9 years after you received the Federal mortgage subsidy. This will increase your tax. See Form 8828, Recapture of Federal Mortgage Subsidy, and Pub. 523, Selling Your Home.

If you have already paid the real estate tax for the period that includes the sale date, subtract the amount on Lines 406, 407 & 408 from the amount already paid to determine your deductible real estate tax. But if you have already deducted the real estate tax in a prior year, generally report this amount as income on the "Other income" line of Form 1040. For more information, see Pub. 523.

For Paperwork Reduction Act Notice, see the 2006 Instructions for Forms 1099, 1098, 5498, and W-2G.
Department of the Treasury - Internal Revenue Service

UNDER PENALTIES OF PERJURY, I CERTIFY THAT THE NUMBER SHOWN BELOW ON THIS STATEMENT IS MY CORRECT TAXPAYER IDENTIFICATION NUMBER.

| Seller's Signature | Seller's Signature | Seller's Signature | Seller's Signature |
|---|---|---|---|
| Tax/D/SSN: | Tax/D/SSN: | Tax/D/SSN: | Tax/D/SSN: |

( RB 1955 / RB 1955 / 14 )

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JOE GANO

**DEFENDANTS**

DONALD MARK EHART AND SPREAD EAGLE, INC.

(b) County of Residence of First Listed Plaintiff **Washoe County, Nevada**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **New Castle County, DE**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Sophia Siddiqui    919 N. Market Street
Fox Rothschild LLP   #1300, Wilmington, DE   19801

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**28 U.S.C. § 1332(a)**

Brief description of cause:
**Action for recission of contract involving fraud and mutual mistake.**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ **$1,152,069.40**

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE **Vice Chancellor Strine**   DOCKET NUMBER **Case No. 2379-VCS**

DATE **May 18, 2007**

SIGNATURE OF ATTORNEY OF RECORD

*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2007 MAY 18  PM 3: 08

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

0 7 - 2 7 1

Civil Action No. _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

5/18/07
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

DAVID SMITH
_____
(Printed name of Party or their Representative)
Fox Rothschild, LLP

Note: Completed receipt will be filed in the Civil Action