IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOE GANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action |
| v. | ) No. 07-271 |
| | ) |
| DONALD MARK EHART and | ) |
| SPREAD EAGLE, INC., a Delaware | ) |
| Corporation, formerly known as Red | ) |
| Eagle Avionics, Inc., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF, JOSEPH GANO'S MOTION TO COMPEL

Plaintiff, Joseph Gano, by his attorneys, Fox Rothschild, LLP and Nurick Law Group,

files this Motion to Compel based upon the following:

1.    Movant is Joseph Gano (hereinafter "Gano"), the Plaintiff in regard to the

above-captioned action.

2.    Respondents are Mark Ehart ("Ehart") and Spread Eagle, Inc. (hereinafter

"Defendants"), the Defendants in regard to the above-captioned action.

3.    Movant has pled, among other things, that Respondent Ehart made oral and

written material misrepresentations regarding the value and finances of Red Eagle Avionics, Inc.

4.    Ehart has denied making the aforementioned misrepresentations.

5.    Accordingly, the credibility of Ehart will be an issue at the time of trial.

6.    In judging credibility, it is proper to judge a witness, among other things, based

upon previous and/or contemporaneous oral and written statements made by a witness in another

court proceeding on the same subject matter.

7.    Ehart has made prior written representations and pleadings filed with the Family Court in and for New Castle County, Delaware (hereinafter "Family Court").

8.    Furthermore, Ehart has provided testimony on multiple occasions in Family Court.

9.    The aforementioned pleadings and testimony are related to Ehart's attempts to reduce his child support obligations and to defend efforts by his former wife, Mary Beth Ehart, to increase those child support payments.

10.    As background,[1] on May 21, 1998, the Family Court issued Orders requiring Ehart to pay child support for his three children in the amount of $1,425.00 a month.

11.    In 2002, sometime after 9/11, Ehart filed a Petition to Modify his support obligations due to the effects of 9/11 on his business.

12.    A hearing was held in regard to the Petition to Reduce the Support Payments and Ehart testified regarding the finances of the business.

13.    On May 6, 2002, the Family Court, based on the facts set forth in Ehart's Petition to Reduce the Support Payments and based upon his testimony at the hearing, reduced Ehart's support obligations from $1,425.00 a month to $773.00 a month.

14.    Ehart sometime in 2002/2003 filed a subsequent Petition to Modify his support obligations (hereinafter the "Second Ehart Petition to Modify").

15.    On February 26, 2003, a hearing was held before the Honorable John Carrow in regard to Ehart's Second Petition to Modify his support obligations.

16.    Both Ehart and his accountant testified at the February 26, 2003 hearing.

---

[1] This information is based upon Family Court records obtained from Mary Beth Ehart. In response to a subpoena issued to Mary Beth Ehart, she chose not to file a Motion to Quash. Instead, she produced all of the Family Court records that she had in her possession. However, she did not have copies of all the records.

17.    Family Court, based upon the facts set forth in the Second Petition to Modify, and the testimony of both Ehart and his accountant, further reduced his support obligations from $773.00 a month to $368.00 a month effective January 1, 2002.

18.    On April 11, 2003, the Honorable John Carrow made a Finding of Change of Circumstances which warranted the reduction in support obligations.

19.    In that Decision, the Court found in part:

"The attached child support calculations were based upon the parties' testimony, documentation and the Court's assessment."

. . . .

"Regarding father's income, the Court finds credible his testimony that his specialty business (Red Eagle Avionics) that installs auto pilots and aircraft has suffered considerably since September 2001. Father does not have the level of business nor high profile clients . . . if his income improves, he must immediately inform mother in order that she may consider filing a Modification Petition." (Emphasis Added).

20.    The Court incorporated additional safeguards in its Order and Decision to protect Mary Beth Ehart in the event that there was a change of circumstances regarding the operations and/or finances of Red Eagle, Inc.

21.    The April 11, 2003 Order, at paragraph 10 provided:

"The parties shall notify each other in writing of every change in circumstance which might materially affect the existing Support Order...."

Attached herewith and marked as Exhibit "A" is a copy of the April 11, 2003 Permanent Modification Support Order which is incorporated herein by reference.

22.    Ehart testified[2] that he never notified the Family Court of any changes in his financial condition or business.

---

[2] During his deposition taken on October 25, 2007.

23.    Based upon Ehart's obligation to notify Mary Beth Ehart of any change  in circumstances and his failure to do so, there is a presumption that during the time period from 2002 through the date of the sale of Red Eagle, Inc.[3], the business continued to perform poorly or as testified to by Ehart during the 2002/2003 proceedings.

24.    The finances and success of Red Eagle, Inc. during the period of  time of 2002 through 2006 is at issue in this case since Ehart made contrary representations to Gano and/or his representative, David Cannavo, in 2005.[4]

25.    After the sale of the assets of Red Eagle, Inc., Mary Beth Ehart filed a Petition to Increase the Support Payments based upon a Change of Circumstances.

26.    The change of circumstances were Ehart's sale of the assets of Red Eagle, Inc. and his receipt of the sale proceeds.

27.    Ehart filed an Answer opposing the Petition to Increase the Support Obligations.

28.    A hearing was held on May 31, 2006 before the  Honorable Mary Much.

29.    Ehart and his accountant testified at the May 31, 2007 hearing.

30.    The Honorable Mary Much, made a Finding of Change of Circumstances effective May 1, 2006 that increased Ehart's support obligations from $368.00 a month to $1,462.00 a month.  Attached herewith and marked as Exhibit "B" is a copy of the June 20, 2007 Permanent Modification Support Order which is incorporated herein by reference.

31.    The Court based its decision principally on the fact that Ehart had sold the business assets of Red Eagle, Inc. to David Cannavo.

---

[3] January 3, 2006.
[4] That is the same time period that was covered by the Court Order.

32.    The Court then proceeded to give the following summary regarding the sale of the

business assets and the litigation which is pending between Ehart and David Cannavo in the

Chancery Court of Delaware:[5]

> "Father operated Red Eagle Avionics out of the New Castle
> County Airport.  Father testified that he elected to sell this
> company in January 2006 to spend more time with his children,
> with whom he currently enjoys two weekends per month visitation.
> The company sold for $2,200,000.00.  The sale of this corporation
> encompassed a hanger, in which aircraft were housed to perform
> installation and repairs, adjacent parking, fencing and landscaping,
> machinery equipment, office furniture and equipment, vehicles,
> maintenance equipment, supplies, spare parts inventor, the Red
> Eagle Avionics name, the company's goodwill, the corporation's
> leases with tenants, and the customer lists.  The sale excluded
> accounts receivable and cash on hand.
>
> The purchase price was to be paid as follows: $1,000,000.00 cash
> at time of sale and a $1,200,000.00 promissory note with interest
> accruing at the rate of 8.5% per annum, payable in equal monthly
> installments of $10,413.88 over a twenty year period.  The sales
> price included:  Hangar-$1,870,000.00; Equipment-$200,000.00;
> Inventory-$30,000.00; Covenant not to compete-$100,000.00.  The
> terms of the covenant prohibit Father from engaging in any
> competitive avionics business, whether as owner or employee,
> within a 150 mile radius of the New Castle County Airport.  The
> covenant provides, however, that Father is permitted to engage in
> avionics employment if the new owner does not agree to hire him.
> Father has not sought any work as an avionics technician since he
> sold his business.
>
> Father received $1,000,000.00 cash at the time of sale and 5
> monthly payments of $10,413.88, totaling $52,069.40.  He used a
> portion of the initial cash buy-out to pay off a commercial loan
> from Wachovia Bank in the amount of $445,901.21 and a
> $30,583,56 small business administration loan.  The net proceeds
> of this sale to Father were $523,515.23.  Of the net proceeds,
> Father deposited $200,000.00 into an investment account in ING
> for the payment of taxes and had full use of the remainder.
> According to Father's testimony, he has approximately $200.00
> left in the ING account without having paid any of his tax liability

---

[5] The facts which gave rise to that litigation are similar to the facts which give rise to this litigation which involved material misrepresentations of fact by Ehart regarding the financial condition of Red Eagle, Inc.  David Cannavo was the purchaser of the assets and movant, Gano provided a bridge loan in the amount of $1,100,000.00.

therefrom and the residual amount from the sale has been dissipated. Father has spent over $500,000.00 in the past 16 months plus $52,069.40 representing the five monthly payments on the amortized payment plan.

Father is in litigation with the Purchaser of Red Eagle Avionics. He is being sued in the Court of Chancery for defrauding the Purchaser. The allegations in the complaint allege that Father overstated the net earnings of the company and that the Purchaser relied on this misstatement to his detriment in purchasing the company. Father's Statement of Operations for Red Eagle for the six months ended June 30, 2005 lists net income from operations of $115,496.00. The Purchaser alleges that this was a gross overstatement of income for that time period. The Purchaser further alleges that Father on multiple occasions throughout the end of 2006 and up until the sale of the business, did state that the business was performing in line with the June 30, 2005 statement of operations. Father admits that he listed June 30, 2005 net income from operations as set forth above but denies any allegations of fraud and has counterclaimed for specific performance under the contract."

33.    It is obvious that the basis for the Court's aforementioned summary was the testimony of Ehart.

34.    In summary, Movant seeks the following:

a.    Copies of all Petitions to increase or decrease support obligation filed with the Family Court;

b.    Copies of all Answers filed in Opposition to any Petitions;

c.    Copies of all Decisions and Orders issued by the Family Court;

d.    Copies of all transcripts, tapes or CDs of any hearing;

e.    Copies of any exhibits introduced into evidence by Ehart during any of the hearings including but not limited to any expert reports.

35.    The aforementioned documentation is relevant to Gano's case since there is a record of a position that has been taken by Ehart in the Family Court proceeding which is

contrary to the representations made by Ehart to Gano and/or his representative, David Cannavo, or that had been made in these court proceedings.

36.    The 2002/2003 child support proceedings would contain specific contrary representations made by Ehart.

37.    The 2006/2007 child support proceedings are relevant since Ehart specifically testified regarding the sale of business and the subsequent dispute and litigation that was filed.

38.    During the course of that testimony or in Ehart's Response to the Petition to Increase the Support Payments, there is a substantial likelihood that there is testimony or representations that are contrary to representations made to Gano or the positions taken by Ehart in this litigation.

39.    The privacy of Mary Beth Ehart and her children can be protected with the release of this documentation since any and all personal identifiable information such as address, birth date or social security number can be redacted.

40.    Movant has attempted to obtain the Family Court records through the service of a Request for Production of Documents on Respondents and the issuance of a subpoena to the Family Court.

41.    In response to the issuance of the Family Court subpoena, the Family Court has filed a Motion to Quash.

42.    Ehart, in response to the request for the Family Court records served the following objection:

> "Pursuant to 13 Del. C. Section 1516, hearings and trials conducted by the Family Court in the State of Delaware are private, and not subject to disclosure to those persons lacking 'a direct and legitimate interest in the particular case.' The Family Court records sought are privileged and confidential by statute. Furthermore, there is a pending Motion to Quash Subpoena for

7

Confidential Records filed by the Family Court of the State of
Delaware."

43.    Movant's counsel has had both discussions and exchanged correspondence with

Respondents' counsel in an effort to reach a resolution of this discovery dispute.

44.    On October 15, 2007, Movant's counsel corresponded to Respondents' counsel

setting forth a resolution of the dispute and clarifying the types of documentation that were being

requested—which includes documentation relating to the support, and not the custody

proceedings.

45.    Movant's counsel proposed two options to resolve the dispute, which were:

    a.    To consent to the Family Court releasing the documents
       with any personal identifiable information regarding Mary
       Beth Ehart being redacted;

    b.    Alternatively, even if Ehart did not have the documentation
       in his possession[6], Ehart could obtain copies of all the
       documents through Family Court Rule of Civil Procedure
       90.1 and 90.4.  Attached herewith and marked as Exhibit
       "C" is a copy of the October 15, 2007 correspondence
       which is incorporated herein by reference.

46.    Despite Movant's offer of the aforementioned compromise, Respondents refused

either option and continue to refuse to produce the Family Court support records, to consent to

release the records or to consent to a Stipulation that was proposed by the Family Court for the

release of the Family Court records.

47.    Movant was able to resolve the dispute with the Family Court through a

stipulation.  However, Respondents refuse to execute the Stipulation. Attached herewith and

marked as Exhibit "D" is a copy of the proposed Stipulation which  is incorporated herein by

reference.

---

[6] Ehart in the Cannavo State Court case claims that his attorney had the documents and that his attorney has been
disbarred and he cannot obtain copies of the documents.

48.    Ehart, during his recent deposition, acknowledged that the nature of the Family Court support proceedings and that in petitions and during testimony, he would have set forth the reasons why he needed the reduction in support payments and that it was based upon the operations of his business, Red Eagle, Inc.

49.    However, Ehart conveniently could not recall the specifics of his testimony or what would have been set forth in the petitions.

50.    Movant is prejudiced if Movant is not entitled to obtain the Family Court support records and based upon the fact that the credibility of Ehart is at issue, it is crucial to Movant's case to have the records.

51.    The statutes cited by Movant in their objection and cited in the Motion for Protective Order by the Family Court do not prevent this Court from entering an Order compelling the release of the Family Court support records.

WHEREFORE, Movant requests that this Court:

a.    Enter an Order compelling Respondent to obtain copies of all Petitions for Support or Modification of Support from the Family Court and produce them to Movant.

b.    Compel Respondent to obtain copies of all Answers to Petitions for Modification of Support and Produce them to Movant;

c.    Compel Respondent to obtain copies of all Court Orders, dispositions, Decisions or Findings regarding the Petitions for Support or Modification thereof and produce them to Movant;

d.    Compel Respondent to obtain copies of all exhibits to the aforementioned Petitions or Answers and any exhibits introduced into evidence at the time of any hearings and produce those exhibits to Movant;

e.   Compel Respondent to obtain electronic copies of the audio record of any Support or Modification of Support hearings and to produce them to Movant;

f.   Compel Respondent to obtain transcripts of any Support or Modification of Support hearings and to produce them to Movant.

**FOX ROTHSCHILD LLP**

By:   _____/s/ Sophia Siddiqui_____
Sophia Siddiqui, Esquire (I.D. No. 4914)
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
(302) 654-7444
(302) 656-8920 (facsimile)

and

Wendy G. Rothstein, Esquire (PA I.D. No 37178)
1250 South Broad Street
P.O. Box 431
Lansdale, PA 19446-0431
(215) 699-6000
(215) 699-0231 (facsimile)

and

**NURICK LAW GROUP**

Todd B. Nurick, Esquire (PA I.D. No. 78847)
111 West Germantown Pike
Plymouth Meeting, PA 19462
(610) 238-9000
(610) 238-9977 (facsimile)

Dated: November 9, 2007

# EXHIBIT A

FORM 222B
ORDER NO: 0034771

# THE FAMILY COURT OF THE STATE OF DELAWARE
FOR NEW CASTLE COUNTY

**PERMANENT
MODIFICATION
SUPPORT ORDER**

EXHIBIT

Ehart 2
10-25-07

| | |
|---|---|
| **PETITIONER / OBLIGOR**<br>D. M EHART | **RESPONDENT**<br>MARY-BETH EHART |
| 95 UNION CHURCH ROAD<br>TOWNSEND, DE 19734<br>PHONE: (302) 376-7614<br>()     -       (WORK) | 112 CHEYENNE COURT<br>NEWARK, DE 19702<br>PHONE: (302) 266-9229<br>()     -       (WORK) |

FILE: CN97-11486
PETITION: 01-35186
PET'N TYPE: SMODD
DCSE:
OS #:
NON-IV-D

DB:01/08/1963 SS: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    DB:03/26/1964 SS: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

EMPL:                           EMPL:

ATTY:JOEL TENENBAUM             ATTY:ROBERT MCDONALD

IN THE INTEREST OF:
JACQUELINE P EHART              DOB: 03/21/1992
MATHEW J EHART                  DOB: 07/27/1994
SHANNON E EHART                 DOB: 08/10/1996

PRESENT AT HEARING:
Petitioner                      **Present**
Respondent                      **Present**
Petitioner's Attorney           **Present**
Respondent's Attorney           **Present**

After hearing on 02/26/2003, the Honorable JOHN CARROW
hereby finds and orders:

1   Obligor D. M EHART is currently under an Order of
    Support entered 5/21/98 to pay $1,425 current per month as modified by
    Interim Order dated 5/6/02 in the amount of $773 per month.

2   Upon a finding of a change of circumstance, the current support obligation is
    modified, effective 01/01/2002 to $   368.00 every month, based on:

    Delaware Child Support Calculation(s) dated 4/4/03, attached and
    incorporated herein by reference.

3   **RETROACTIVE SUPPORT = $716 current/ month (11/1/01 - 12/31/01).
    The parties shall exchange documentation in order to calculate whether
    father has underpaid or overpaid his support obligation.**

PAGE    2

FO⁀   ?2B                           PETITIONER: D. M EHART              PETITION: 01-35186
   ‚NO: 0034771                    RESPONDENT: MARY-BETH EHART         FILE: CN97-11486

4  The total payment is $     368.00 every month payable to Obligee.
   Total includes:

   $   368.00 current support

5  The issuance of income attachment shall be stayed.
   Payments shall be made directly to Obligee.  Attachment,
   payable to DCSE, shall issue automatically upon the filing of a verified
   notice of default in payment for seven (7) working days.  Basis for stay:

6  Mother shall provide health insurance
   covering the child(ren) when/while available, to be secured by attachment, and
   shall provide the support recipient with all necessary documents to allow for
   use of the health insurance.

7  The first $350 of unreimbursable health care expense incurred in a calendar
   year is the responsibility of the support recipient.  Any such expense in
   excess of $350 is the responsibility of the parents as follows:
   Father 25%, Mother 75%.  Supporting documentation must accompany all
   requests for payment, and payment is to be made within a reasonable time
   thereafter.

8  DISCUSSION/ADDITIONAL TERMS AND CONDITIONS:
      The attached child support calculations were based upon the parties'
   testimony, documentation and the court's assessment.
      For the reasons set forth on the court record, the court declines to
   include private school tuition expenses in the support calculations as there
   does not appear to have been a clear agreement by father to place the children
   in private school as is required by the support formula.
      Regarding father's income, the court finds credible his testimony that his
   specialty business (Red Eagle Avionics) that installs auto pilots in aircraft
   has suffered considerably since September 2001.  Father does not have the
   level of business nor high profile clients (such as ICI Zeneca and Hercules)
   he previously had.  Notwithstanding the foregoing, father must do everything
   possible to maximize his earning hereafter consistent with his employment
   experience and education.  If his income improves, he must immediately inform
   mother in order that she may consider filing a modification petition.
   Pursuant to the court's directive at the 2/26/03 hearing mother submitted
   her 2002 Form W-2 and her three (3) recent paystubs from employment.
   Similarly, father provided his 2001 corporate tax return.  FATHER MUST PROVIDE
   MOTHER WITH A COPY OF HIS 2002 CORPORATE RETURN WITHIN FIVE (5) BUSINESS DAYS
   OF FILING SAME WITH THE IRS.

9  The parties shall report any changes of drivers license number, address
   (including incarceration or release from incarceration), telephone number,
   employer, employer address or telephone number to the Family Court Support
   Unit in New Castle County at (302) 255-0300.

PAGE    3

FO  '22B                 PETITIONER: D. M EHART                    PETITION: 01-35186
  NO: 0034771            RESPONDENT: MARY-BETH EHART                  FILE: CN97-11486

10   The parties shall notify each other in writing of every change in circumstance
     which might materially affect the existing Support Order, including change in
     health insurance coverage.  In addition, the parties shall exchange completed
     financial report forms every 12 months.

11   A Delaware Order to pay support remains in effect until the youngest child has
     reached 18 and is no longer enrolled in high school, or 19, whichever occurs
     first.

12   When the current support order is revoked pursuant to 13 Del.C.§517(a),
     payment shall continue in the total amount until any retroactive and/or past
     due support is paid.

13   Except for parties who fail to appear after proper notice, parties may appeal
     a final Order of a Commissioner by filing and serving written objections of
     such Order within ten (10) days of the Order.

4/11/03

DATE WRITTEN ORDER ISSUED                         JUDGE/COMMISSIONER

cc:  File                  Petitioner                    Respondent
     DCSE Operations       Petitioner's Attorney         Respondent's Attorney
     DCSE Accounting       Vital Statistics

                                           CFCDROB
                                           04/11/2003

**THE FAMILY COURT OF THE STATE OF DELAWARE**
CHILD SUPPORT CALCULATION

~~ion No.   0135186
No.  CN97-11486                          𝓘                   Period: 11/01/2001 To 12/31/2001
Dacses No.

|   |   | FATHER | MOTHER |
|---|---|--------|--------|

| | | | FATHER | MOTHER |
|---|---|---|---|---|
| 1 | A- Monthly Gross Earned Income . . . . . . . . . . . $ | | 3000 ✱ | 4366 |
| | B- Monthly Gross Other Income  . . . . . . . . . . . + | | | |
| | C- Monthly Earned Income Non-Taxable . . . . . . . . + | | | |
| | D- Monthly Self Employed Income . . . . . . . . . . + | | | |
| | E- TOTAL MONTHLY INCOME (Lines 1A+B+C+D;Taxes based on A,B,D)=$ | | 3000 | 4366 |

| 2 | TAXES:  FEDERAL + FICA/MED + STATE + LOCAL +  OTHER = | | | |
|---|---|---|---|---|
| | FATHER    424      229        110                       -$ | | 763 | |
| | MOTHER    793      334        186       55                -$ | | | 1368 |

| 3 | Allowable Deductions: | | | |
|---|---|---|---|---|
| | MEDICAL + PENSION  + UNION DUES + ALIMONY + OTHER = | | | |
| | FATHER                                          -$ | | | |
| | MOTHER  102        130                            -$ | | | 232 |

| | | | -------- | -------- |
|---|---|---|---|---|
| | NET INCOME  =$ | | 2237 | 2766 |

**NET INCOME AVAILABLE FOR PRIMARY SUPPORT**

| 4 | PARENT'S SELF SUPPORT ALLOWANCE  . . . . . . . . . -$ | | 850 | 850 | |
|---|---|---|---|---|---|
| 5 | NET INCOME AFTER SELF SUPPORT ALLOWANCE . . . . . . . . | | 1387 | 1916 | |
| 6 | NUMBER OF DEPENDENT CHILDREN NOT IN THIS ACTION  . . . . . | | | | |
| 7 | % ADJUSTMENT FOR SUPPORT OF OTHER CHILDREN . . . . . . . . | | 100 % | 100 % | TOTAL |
| 8 | NET INCOME AVAILABLE FOR PRIMARY SUPPORT (Line 5 - Line 7)  =$ | | 1387 | 1916 =$ | 3303 |
| 9 | SHARE OF TOTAL AVAILABLE NET INCOME   (Line 8 / Line 8 Total) | | 42 % | 58 % | |

**CHILD(REN)'S PRIMARY SUPPORT NEED**

| 10 | NUMBER OF CHILDREN DUE SUPPORT IN THIS ACTION . . . . . . | | .0 | 3 .0 | 3.0 |
|---|---|---|---|---|---|
| 11 | PRIMARY SUPPORT ALLOWANCE . . . . . . . . . . . . . $ | | | 920 $ | 920 |
| 12 | CHILD CARE AND OTHER EXPENSES  . . . . . . . . . . +$ | | | +$ | |
| 13 | TOTAL PRIMARY NEED (Line 11 + Line 12) . . . . . . . . =$ | | | 920 =$ | 920 |
| 14 | PRIMARY SUPPORT OBLIGATION  (Line 9 X Line 13 Total) . . . =$ | | 386 | 534 | |

**STANDARD OF LIVING ADJUSTMENT (SOLA)**

| 15 | NET AVAILABLE FOR SOLA (Line 8 - Line 14) . . . . . . . $ | | 1001 | 1382 | |
|---|---|---|---|---|---|
| 16 | SOLA PERCENTAGE . . . . . . . . . . . . . . . . . | | 33 % | 33 % | |
| 17 | SOLA OBLIGATION (Line 15 X Line 16) . . . . . . . . . $ | | 330 | 456 $ | /Child 262 |

**TOTAL MONTHLY SUPPORT AMOUNT**

| 18 | GROSS MONTHLY OBLIGATION (Line 14 + Line 17) . . . . . . =$ | | 716 | 990 | |
|---|---|---|---|---|---|
| 19 | PARENTING TIME ADJUSTMENT . . . . . . . . . . . . -$ | | | | |
| 20 | AMOUNT RETAINED . . . . . . . . . . . . . . . . -$ | | | 990 | |

| 21 | **NET MONTHLY CHILD SUPPORT ORDER AMOUNT (Line 18 - 19 & 20)  =$** | | **716** | |
|---|---|---|---|---|

CFCJCAR       04/04/2003

✱ Father's Form-W-2 for 2001 reports gross earnings of $36,000 ÷ 12 months =
$3,000 per month

**THE FAMILY COURT OF THE STATE OF DELAWARE**
**CHILD SUPPORT CALCULATION**

~~ion No.  0135186
No.  CN97-11486                    $II$              Period: 01/01/2002 To
~~cses No.

|  |  | FATHER | MOTHER |
|---|---|---|---|
| 1 | A- Monthly Gross Earned Income . . . . . . . . . . . . . . . $ | 1875 * | 4366 *** |
|  | B- Monthly Gross Other Income . . . . . . . . . . . . + |  |  |
|  | C- Monthly Earned Income Non-Taxable . . . . . . . . . + |  |  |
|  | D- Monthly Self Employed Income . . . . . . . . . . . + |  |  |
|  | E- TOTAL MONTHLY INCOME (Lines 1A+B+C+D;Taxes based on A,B,D)=$ | 1875 | 4366 |

2  TAXES:    FEDERAL +   FICA/MED  +  STATE  + LOCAL  +  OTHER =
   FATHER    185        143        50                          -$  378
   MOTHER    752        334        186       55                           -$ 1327

3  Allowable Deductions:
          MEDICAL +  PENSION   + UNION DUES + ALIMONY + OTHER =
   FATHER                                                      -$
   MOTHER  102 ****   130 ***                                           -$  232
                                                            --------  --------
                                        NET INCOME  =$   1497      2807

**NET INCOME AVAILABLE FOR PRIMARY SUPPORT**

| 4 | PARENT'S SELF SUPPORT ALLOWANCE . . . . . . . . . . -$ | 850 | 850 |  |
|---|---|---|---|---|
| 5 | NET INCOME AFTER SELF SUPPORT ALLOWANCE . . . . . . . | 647 | 1957 |  |
| 6 | NUMBER OF DEPENDENT CHILDREN NOT IN THIS ACTION . . . . . |  |  |  |
| 7 | % ADJUSTMENT FOR SUPPORT OF OTHER CHILDREN . . . . . . . | 100 % | 100 % | TOTAL |
| 8 | NET INCOME AVAILABLE FOR PRIMARY SUPPORT (Line 5 - Line 7)  =$ | 647 | 1957 =$ | 2604 |
| 9 | SHARE OF TOTAL AVAILABLE NET INCOME    (Line 8 / Line 8 Total) | 25 % | 75 % |  |

**CHILD(REN)'S PRIMARY SUPPORT NEED**

| 10 | NUMBER OF CHILDREN DUE SUPPORT IN THIS ACTION . . . . . . | .0 | 3 .0 | 3.0 |
|---|---|---|---|---|
| 11 | PRIMARY SUPPORT ALLOWANCE . . . . . . . . . . . $ |  | 920 $ | 920 |
| 12 | CHILD CARE AND OTHER EXPENSES . . . . . . . . . . +$ |  | +$ |  |
| 13 | TOTAL PRIMARY NEED (Line 11 + Line 12) . . . . . . . =$ |  | 920 =$ | 920 |
| 14 | PRIMARY SUPPORT OBLIGATION   (Line 9 X Line 13 Total) . . . =$ | 230 | 690 |  |

**STANDARD OF LIVING ADJUSTMENT (SOLA)**

| 15 | NET AVAILABLE FOR SOLA (Line 8 - Line 14) . . . . . . . $ | 417 | 1267 |  |
|---|---|---|---|---|
| 16 | SOLA PERCENTAGE . . . . . . . . . . . . . . . | 33 % | 33 % |  |
| 17 | SOLA OBLIGATION (Line 15 X Line 16) . . . . . . . . . $ | 138 | 418 $ | /Child 185 |

**TOTAL MONTHLY SUPPORT AMOUNT**

| 18 | GROSS MONTHLY OBLIGATION (Line 14 + Line 17) . . . . . . =$ | 368 | 1108 |
|---|---|---|---|
| 19 | PARENTING TIME ADJUSTMENT . . . . . . . . . . . . . -$ |  |  |
| 20 | AMOUNT RETAINED . . . . . . . . . . . . . . . . -$ |  | 1108 |
| 21 | **NET MONTHLY CHILD SUPPORT ORDER AMOUNT (Line 18 - 19 & 20)  =$** | 368 |  |

CFCJCAR      04/04/2003

*The best evidence of foster's present earnings is his W-2 earnings from 2002 in the amount of $22,500. See DISCUSSION paragraph for further explanation.

**Stipulated figure based upon 40 hours/week @ $25/hour + $33/month average additional earnings at a gynecology office.

***3% Cap (.03 × $4333 gross Christiana (stipulated) pay)

# EXHIBIT B

FORM 222B
RDER NO: 0112767





THE FAMILY COURT OF THE STATE OF DELAWARE
FOR NEW CASTLE COUNTY

PERMANENT
MODIFICATION
SUPPORT ORDER

PETITIONER
MARY-BETH EHART

407 JOHN VINEYARDS LANE
NEW CASTLE, DE 19720
PHONE: (302) 221-0117
        (302) 428-2952 (WORK)

RESPONDENT / OBLIGOR
DONALD M EHART

795 UNION CHURCH ROAD
TOWNSEND, DE 19734
PHONE: (302) 376-7614
        ()      -      (WORK)

FILE: CN97-11486
PETITION:06-14991
PET'N TYPE: SMODO
DCSE:
OS #:
NON-IV-D

DB:03/26/1964 SS:

EMPL:

ATTY:PATRICIA GARTHWAITE

DB:01/08/1963 SS:

EMPL:

ATTY:DAVID GAGNE

IN THE INTEREST OF:
JACQUELINE P EHART
MATTHEW J EHART
SHANNON E EHART

DOB: 03/21/1992
DOB: 07/27/1994
DOB: 08/10/1996

PRESENT AT HEARING:
Petitioner                          Present
Respondent                          Present
Petitioner's Attorney               Present
Respondent's Attorney               Present

After hearing on 05/31/2007, the Honorable MARY MUCH
hereby finds and orders:

1   Obligor DONALD M EHART is currently under an Order of
    Support entered 04/11/2003 to pay $368.00 current support every month.

2   Upon a finding of a change of circumstance, the current support obligation is
    modified, effective 05/01/2006 to $ 1462.00 every month, based on:

    Delaware Child Support Calculation(s) dated 06/15/2007, attached and
    incorporated herein by reference.

3   Obligor owes arrears/retroactive support of $7682.00 as of 06/30/2007,
    as established by this order, calculated as follows:
    [$20468.00 owed ($1462.00 x 14 months) less $12786.00 paid (3 months x $368.00
    per month plus 11 months x $1062.00)]

PAGE    2

FORM 222B                    PETITIONER: MARY-BETH EHART              PETITION: 06-14991
ORDER NO: 0112767           RESPONDENT: DONALD M EHART                 FILE: CN97-11486

4   The total payment is $    1462.00 every month payable to Obligee.
    Total includes:

    $  1462.00 current support
    PAYMENT SHALL COMMENCE ON OR BEFORE 07/15/2007.

5   Income attachment is ordered against all of the obligor's income pursuant to
    13 Del.C.§513.  The currently applicable consumer credit protection limit
    when obligor is employed is 60%.

6   The issuance of income attachment shall not be stayed.
    Income attachment will be payable to DCSE.  Until the income attachment takes
    effect, or at any time full payment is not secured by income attachment,
    Obligor is to make payment to DCSE at P.O. Box 12831, Wilmington, DE 19850.

7   Mother shall provide health insurance
    covering the child(ren) when/while available, to be secured by attachment, and
    shall provide the support recipient with all necessary documents to allow for
    use of the health insurance.

8   The first $350 of unreimbursable health care expense incurred in a calendar
    year is the responsibility of the support recipient.  Any such expense in
    excess of $350 is the responsibility of the parents as follows:
    Father 58%, Mother 42%.  Supporting documentation must accompany all
    requests for payment, and payment is to be made within a reasonable time
    thereafter.  A petition for reimbursement should be filed no later than
    December 31 in the second year after the expenditure.

9   Petitioner is not seeking a finding of contempt.

10  See attached supplemental disposition.

11  The parties shall report any changes of drivers license number, address
    (including incarceration or release from incarceration), telephone number,
    employer, employer address or telephone number to the Family Court Support
    Unit in New Castle County at (302) 255-0300.

12  The parties shall notify each other in writing of every change in circumstance
    which might materially affect the existing Support Order, including change in
    health insurance coverage.  In addition, the parties shall exchange completed
    financial report forms every 12 months.

13  A Delaware Order to pay support remains in effect until the youngest child has
    reached 18 and is no longer enrolled in high school, or 19, whichever occurs
    first.

PAGE    3

.ORM 222B                    PETITIONER: MARY-BETH EHART              PETITION: 06-14991
ORDER NO: 0112767            RESPONDENT: DONALD M EHART                   FILE: CN97-11486

14   When the current support order is revoked pursuant to 13 Del.C.§517(a),
     payment shall continue in the total amount until any retroactive and/or past
     due support is paid.

15   Except for parties who fail to appear after proper notice, parties may appeal
     a final Order of a Commissioner by filing and serving written objections of
     such Order within ten (10) days of the Order.

_6/20/07_____                    _____
DATE WRITTEN ORDER ISSUED                  JUDGE/COMMISSIONER

cc:   ✓ File                 ✓ Petitioner              ✓ Respondent
      _ DCSE Operations      ✓ Petitioner's Attorney   ✓ Respondent's Attorney
      ✓ DCSE Accounting      _ Vital Statistics

                                           CFCMHAR
                                           06/19/2007

SUPPLEMENTAL DISPOSITION

EHART v EHART
CN97-11486
06-14991

Both parties appeared with their respective counsel for hearing on the above-captioned petition for support modification. Mother is fully employed as an x-ray technician at Christiana Hospital. She has consistently worked the midnight shift since the parties' middle child, Matthew, was born in 1994. She testified that Father had earned approximately $88,000.00 the year before the parties separated and divorced in 1998. The three children of this marriage reside primarily with Mother.

Father maintains residences in both Florida and Delaware. He is currently employed as a caretaker of golf carts at the Eagle's Golf Course in Odessa, Florida earning $6.67 per hour for 20 to 24 hours per week. According to his 4/27/2007 pay stub, he has worked 56 hours this year. Father is an experienced avionics technician--individual who installs and repairs communications systems in aircraft. He has been in this field for approximately 20 years. Father has operated avionics' businesses since 1992. Until January 2006, Father had been the sole owner of Red Eagle Avionics, an avionics corporation in the business of installation and repair of radio/communications equipment on aircraft. At any given time, he employed up to 8 employees in his business. The Court determines that Father is grossly underemployed for child support purposes.

Father operated Red Eagle Avionics out of the New Castle County Airport. Father testified that he elected to sell this company in January 2006 to spend more time with his children, with whom he currently enjoys two weekends per month visitation. The company sold for $2,200,000.00. The sale of this corporation encompassed a hangar, in which aircraft were housed to perform installation and repairs, adjacent parking, fencing and landscaping, machinery equipment, office furniture and equipment, vehicles, maintenance equipment, supplies, spare parts inventory, the Red Eagle Avionics name, the company's goodwill, the corporation's leases with tenants, and the customer lists. The sale excluded accounts receivable and cash on hand.

The purchase price was to be paid as follows: $1,000,000.00 cash at time of sale and a $1,200,000.00 promissory note with interest accruing at the rate of 8.5% per annum, payable in equal monthly installments of $10,413.88 over a twenty year period. The sales price included: Hangar--$1,870,000.00; Equipment--$200,000.00; Inventory--$30,000.00; Covenant not to compete--$100,000.00. The terms of the covenant prohibit Father from engaging in any competitive avionics business, whether as owner or employee, within a 150 mile radius of the New Castle County Airport. The covenant provides, however, that Father is permitted to engage in avionics employment if the new owner does not agree to hire him. Father has not sought any work as an avionics technician since he sold his business.

Father received $1,000,000.00 cash at the time of sale and 5 monthly payments of $10,413.88, totaling $52,069.40. He used a portion of the initial cash buy-out to pay off a commercial loan from Wachovia Bank in the amount of $445,901.21 and a $30,583.56 small business administration loan. The net proceeds of this sale to Father were $523,515.23. Of the net proceeds, Father deposited $200,000.00 into an investment account in ING for the payment of taxes and had full use of the remainder. According to Father's testimony, he has approximately $200.00 left in the ING account without having paid any of his tax liability therefrom and the residual amount from the sale has been dissipated. Father has spent over $500,000.00 in the past 16 months plus $52,069.40 representing the five monthly payments on the amortized payment plan.

Father is in litigation with the Purchaser of Red Eagle Avionics. He is being sued in the Court of Chancery for defrauding the Purchaser. The allegations in the complaint allege that Father overstated the net earnings of the company and that the Purchaser relied on this misstatement to his detriment in purchasing the company. Father's Statement of Operations for Red Eagle for the six months ended June 30, 2005 lists net income from operations of $115,496.00. The Purchaser alleges that this was a gross overstatement of income for that time period. The Purchaser further alleges that Father on multiple occasions throughout the end of 2006 and up

until the sale of the business, did state that the business was performing in line with the June 30, 2005 statement of operations. Father admits that he listed June 30, 2005 net income from operations as set forth above but denies any allegations of fraud and has counterclaimed for specific performance under the contract.

A review of Red Eagle Avionics' January 2006 Commerce Bank statement with canceled checks attached reveals that Father received $450,000.00 from this account that month. He withdrew $400,000.00 on January 6, 2006 and wrote a check to himself for $50,000.00 which was presented to Commerce on January 8, 2006 for payment. The Court has no information concerning Red Eagle Avionics' accounts receivable or expenses for the 2006 calendar year, as Father failed to produce documents, in the form of Red Eagle bank statements for the year 2006, to Mother despite an order of production by the Court. Perhaps the bank statements were under the name of Spread Eagle, Inc., as Father was required by the agreement of sale to relinquish the name Red Eagle following the purchase.

A review of Father's personal bank statements for calendar year 2006 reveals that Father deposited over $585,000.00 into that account in the first 11 months of that year. Father's withdrawals in the form of checks and teller machine withdrawals total over $529,000.00. These statements reveal that Father did fund the ING account in March 2006 with $200,000.00 and then began depleting that account by way of $20,000.00 monthly transfers from ING back into his personal savings account, beginning August 2006. There are numerous automatic teller withdrawals from Father's personal account from a Dover Downs' ATM machine.

Father's 2004 and 2005 taxes reveal that Father took mortgage interest deductions of $22,814.00 and $19,058.00, respectively. On both of these returns Father claimed income of slightly more than his mortgage interest deductions alone. It is clear that Father is grossly underreporting his income available for child support.

Based on the foregoing, the Court concluded that not only is Father underemployed but he has failed to actively seek employment in his line of work. He will be attributed with the gross hourly earnings of an experienced avionics technician, $23.83/hour-per 2005 DOL Wage Surveys. In addition, Father had net proceeds of the sale of his business entity of $523,515.23, after the payment of the two loans plus additional unearned income of $52,069.40 (the five amortized monthly payments on the sale of the business referenced above). If this amount was invested in ING, at a rate of 4.5% per annum, Father would receive $25,901.00 additional income per year, which would be available for the support of his children. Therefore, the Court has attributed earnings to Father of $49,566.00 per year plus unearned income of $25,901.00. This amount is less than what Mother testified Father made during their marriage but significantly more that what Father testified he has earned in the past. These figures do not include income Father received in 2006 from his net accounts receivable, as Father failed to produce those documents to Mother.

The parties agreed that Father has paid support directly to Mother in the amount of $12,786.00 from May, 2006 through June, 2007 (3 payments of $388.00 plus 11 payments of $1,062.00). The Court has calculated Father's back support obligation from May 2006 forward. The Court declines to order payment on the back support obligation as prior arrears/back support amounts were never established by this Court. In fact, a Motion to Enter Judgment in the amount of $11,810.00 on Father's behalf was filed by Father's previous counsel in 2003; this was never ruled on. The parties may discuss the issue of arrears/back support and if need be, request a hearing on same under the previous petition—01-35186 and the above-captioned petition.

THE FAMILY COURT OF THE STATE OF DELAWARE
CHILD SUPPORT CALCULATION

Petition No.  0614991  EHART, MARY-BETH          VS. EHART, DONALD
File No.  CN97-11486                             Period: 05/01/2006 To 05/31/2007
Dacses No.

| | | FATHER | MOTHER |
|---|---|---|---|
| Net Monthly Income | | | |
| 1 A. Salary/Wages . . . . . . . . . . . . . . . . . . . . . $ | | 4130 | 5587 |
| B. Self Employment . . . . . . . . . . . . . . . . . + | | | |
| C. Other Taxable Income (including Alimony received) + | | 2158 | |
| D. Non-Taxable Income . . . . . . . . . . . . . . + | | | |
| E. TOTAL MONTHLY INCOME . . . . . . . . . . . =$ | | 6288 | 5587 |

2  TAXES:      FEDERAL + FICA/MED +  STATE + LOCAL +  OTHER =
        FATHER   1171     315       297                        -$   1783
        MOTHER    996     427       255        70                        -$  1748

3  Allowable Deductions:
        MEDICAL +  PENSION   + UNION DUES + ALIMONY + OTHER =
   FATHER                                                     -$
   MOTHER    119        168                                          -$   287

                                        NET INCOME  =$   4505       3552

        NET INCOME AVAILABLE FOR PRIMARY SUPPORT
4  PARENT'S SELF SUPPORT ALLOWANCE  . . . . . . . . . . -$    970        970

5  NET INCOME AFTER SELF SUPPORT ALLOWANCE . . . . . . . .   3535       2582

6  NUMBER OF DEPENDENT CHILDREN NOT IN THIS ACTION  . . . .

7  % ADJUSTMENT FOR SUPPORT OF OTHER CHILDREN . . . . . . .   100 %      100 %   TOTAL

8  NET INCOME AVAILABLE FOR PRIMARY SUPPORT (Line 5 - Line 7) =$   3535   2582 =$  6117

9  SHARE OF TOTAL AVAILABLE NET INCOME    (Line 8 / Line 8 Total)   58 %      42 %

        CHILD(REN)'S PRIMARY SUPPORT NEED
10  NUMBER OF CHILDREN DUE SUPPORT IN THIS ACTION . . . . . .              3          3

11  PRIMARY SUPPORT ALLOWANCE . . . . . . . . . . . . $              990  $   990

12  CHILD CARE AND OTHER EXPENSES . . . . . . . . . . +$                   +$

13  TOTAL PRIMARY NEED (Line 11 + Line 12) . . . . . . . . =$          990 =$   990

14  PRIMARY SUPPORT OBLIGATION  (Line 9 X Line 13 Total) . . . =$   574        416

        STANDARD OF LIVING ADJUSTMENT (SOLA)
15  NET AVAILABLE FOR SOLA (Line 8 - Line 14) . . . . . . . $   2961       2166

16  SOLA PERCENTAGE . . . . . . . . . . . . . . . . .           30 %       30 %

17  SOLA OBLIGATION (Line 15 X Line 16) . . . . . . . . $   888        650  $  /Child
                                                                              513

        TOTAL MONTHLY SUPPORT AMOUNT
18  GROSS MONTHLY OBLIGATION (Line 14 + Line 17) . . . . . =$   1462       1066

19  PRIMARY/SOLA (Line 10 X per child SOLA + Line 11) . . . . -$              2529

20  CHILD CARE/TUITION PAID BY EACH PARENT . . . . . . . . -$

21  A. Parenting Time Percentage . . . . . . . . . . .            %          %
    B. Parenting Time Adjustment . . . . . . . . . . . -$
       (Line 21A X other parent's line 19)

22  A. Self Support Protection Percentage . . . . . . .          100 %        %
    B. Self Support Protection (Line 5 X Line 22 - Line 21A) $   3535

23  NET OBLIGATION (Line 18 - 19,20,21B, but not more than 22B) =$  1462          0

                                        CFCMMUC     06/15/2007

* Attribution of earnings of exp. Anonics tech - $23.83/hr x 40hr/wk
** Interest income on proceeds of sale of business - Attribution
+ Based on Zerdo - W-2 wages

# EXHIBIT C

Wendy G. Rothstein
Direct Dial: (215) 661-9409
Email Address: wrothstein@foxrothschild.com
File No. 28437-00001

October 15, 2007

**VIA E-MAIL**
Richard H. Cross, Esquire
Cross & Simon, LLC
913 North Market Street
11th Floor
Wilmington, DE  19801

Re:     **Gano v. Ehart and Spread Eagle, Inc.**
        **United States District Court for the District of Delaware**
        **Docket No.:  CA-07-271**

Dear Rick:

This letter is a follow up to our conversation on Friday morning and the conference call before Judge Thynge regarding the issue of the Ehart Family Court records. As you are aware, a subpoena was issued on Family Court to produce certain support records from the Ehart support proceedings. Additionally, a Request for Production of Documents was issued to you also compelling Mr. Ehart to produce those records. In the Chancery Court case filed by David Cannavo against your client, a request was made for the same records and while your client initially agreed to produce the records, your office provided a supplemental response indicating that the records were in the possession of his previous attorney and that his previous attorney could not be located and that he had been disbarred.

The documents requested in the subpoena that was issued to the Family Court and in the Request for Production of Documents that was issued to your office are relevant in that, Mrs. Ehart in a deposition in the Cannavo Chancery Court proceedings, testified that your client made representations in both pleadings and in Court regarding the value of Red Eagle Avionics, Inc. and that he was contending that the company was in poor condition which is contrary to the representations that he made to Joseph Gano. Accordingly, the documents are relevant and Joseph Gano has a right to obtain copies of those documents in these proceedings.

I am writing to you now to resolve this dispute so that we can avoid having to impose upon the Court for the Court's intervention in this matter. It is unacceptable for your client not to produce the documents nor is it an excuse for your client to indicate that he does not have documents in his possession. There

Richard H. Cross, Esquire
October 15, 2007
Page 2

are two ways that the documents can be produced. First, you can consent to the Family Court releasing the documents with any personal identifiable information regarding Mrs. Ehart being redacted. Second, your client has the ability to obtain copies of the documents by obtaining them from the Family Court. Family Court Rule of Civil Procedure 90.1 provides:

> "Unless otherwise required by statute or rule, all records of proceedings before the Court shall be private and shall not be open or available to anyone except (1) the Court and its staff, or (2) the parties and their attorneys, or (3) other courts and public agencies, or (4) persons specifically approved by the Court because they have a legitimate interest in the records, subject in all events to such reasonable restrictions, conditions, or limitations as the Court may impose."

Family Court Rule of Civil Procedure 90.4 provides:

> "Any party to a proceeding, or the party's authorized attorney, may obtain an electronic copy of the audio file of such proceeding upon the filing of an application and affidavit of proper use and upon payment of assessed costs, unless the audio record of such proceeding has been destroyed in accordance with the Court's archiving and retention policy."

In order to avoid any confusion, the only documents/records that I am requesting from either you or the Family Court are the following:

1. Copies of all Petitions for Support or Modification of Support;

2. Copies of all Answers to Petitions or Modifications for Support;

3. Copies of all Court Orders, Dispositions, Decisions, or Findings regarding Petitions for Support or Modification;

4. Copies of all exhibits to the aforementioned Petitions or Answers;

5. Copies of all exhibits introduced into evidence at the time of any Support or Modification of Support hearings including but not limited to any expert reports;

6. Electronic copies of the audio record of any Support or Modification of Support hearings;

7. Transcripts of any Support or Modification of Support hearings.

Judge Thynge, during our recent status conference call, discussed the Motion for Protective Order that was filed by Family Court. I advised her that I would be speaking with both you and the Assistant

Richard H. Cross, Esquire
October 15, 2007
Page 3


Attorney General and that I expected that there should be a way to resolve the dispute and that it was not necessary for her to rule on the Motion for Protective Order at this point in time. Judge Thynge indicated that I should report back to her by October 24, 2007, on this matter. Accordingly, please advise me as to which of the aforementioned two alternatives are acceptable to you so I can report back your position to Judge Thynge. I am requesting to hear from you no later than October 22, 2007.

Very truly yours,



Wendy G. Rothstein


WGR:cbc

cc:    Tara M. DiRocco, Esquire (via email)
       Todd Nurick, Esquire (via email)
       Sheldon Rennie, Esquire (via email)
       Sophia Siddiqui, Esquire (via email)

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOE GANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-271 *** |
| | ) | |
| | ) | |
| DONALD MARK EHART and | ) | |
| SPREAD EAGLE, INC., | ) | |
| a Delaware Corporation f/k/a | ) | |
| Red Eagle Avionics, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION AND ORDER AS TO CONFIDENTIALITY

This Stipulation and Order of Confidentiality is designed to resolve issues presented by the subpoena *duces tecum* issued by the plaintiff Joe Gano (the "Plaintiff"), seeking access to confidential materials within the possession or control of the Family Court of the State of Delaware ("Family Court"), to wit, documents from the file captioned *In Re: the marriage of D. Mark Ehart and Mary Beth Ehart,* No. CN97-11486 ("the Family Court file"). Mark Ehart is a defendant in the above–captioned matter, and has indicated by letter of counsel his objection to disclosure of this information. Mary Beth Ehart is not a party to the instant litigation, and has not consented to disclosure of materials from the Family Court file. The Department of Justice, by and through Deputy Attorney General Ralph K. Durstein III, has filed a Motion on behalf of the Family Court to quash the subpoena. It is, therefore, agreed as follows:

1.    The contents of the Family Court file, may be produced by the Family Court to Plaintiff for purposes of discovery in this case, subject to the terms and conditions and restrictions on use and access of the documents set forth below in this Stipulation and Confidentiality Order.  Access to the file materials produced shall be limited to the parties to this action, their lawyers, the United States District Court and Court personnel, and any expert witnesses retained by the parties.  No other person may access the material, without leave of Court, after notice to the undersigned parties.  All file materials shall be designated as "CONFIDENTIAL" and shall be handled as set forth more fully below.

2.    The designation of material as "CONFIDENTIAL" for purposes of this Stipulation shall be made in the following manner:

(a)    Family Court shall affix the legend "Confidential" to each page containing any confidential material, except that in the case of multi-page documents bound together by staple or other binding, the word "Confidential" need only be stamped on the cover page of the document in order for the entire document to be treated as confidential material; provided that the failure to designate a document as "Confidential" does not constitute a waiver of such claim, and  the Defendants may so designate a document after such document has been produced, with the effect that such document is subject to the protections of this Order;

(b)    In the case of depositions or other pretrial discovery: (i) by a statement on the record at the time of such disclosure that such testimony regarding documents or information produced by Family Court shall be treated as

2

confidential material; or (ii) by written notice, sent by counsel to all parties within ten business days after receiving a copy of the transcript. In both of the foregoing instances, counsel shall direct the court reporter that the confidentiality legend be affixed to the first page and all portions of the original and all copies of the transcript containing any confidential material. Only those portions of the transcripts designated as "Confidential" pursuant to sections (i) and (ii) above shall be deemed confidential material. The parties may modify this procedure for any particular deposition, through agreement on the record at such deposition, or otherwise by written stipulation, without further order of the Court:

(c)     In the case of documents, messages, or other data in electronic form, including recorded Family Court proceedings: (i) where the electronic data has been or can be reduced to physical form, as in a DVD or CD or other portable storage medium, the surface and/or the case or the object shall be marked as "Confidential", consistent with the practice outlined in subsection (a) above; (ii) where the document, message, or other data is stored in electronic form, any such data shall be placed in a separate folder labeled "Confidential" and containing a message referring to this Order and attaching a copy.

3.     Each person to whom confidential material is disclosed or made available, including experts or consultants retained by any party, shall be advised of the existence and the contents of this Stipulation and Order and shall be bound by its terms and conditions. No such person shall divulge any confidential material, or any data or information obtained, derived or generated from confidential material, to any other person, except as provided herein. Each such person, excluding the parties to this action,

counsel of record, and counsel's staff, shall sign a statement which shall include his or her name, job title and employer, and a statement that he or she has read this Stipulation and Order of Confidentiality and agrees to be bound by all of its terms and conditions. Such statements shall be maintained by counsel throughout this litigation, and the statements of any persons shown confidential material shall be made available to counsel for the Defendants upon termination of this litigation or upon good cause shown.

4.      Confidential material, or data and information obtained, derived or generated from confidential material, shall be disclosed only to:

(a)     the Court and Court personnel, including employees and consultants of the court necessary for the adjudication of the Litigation (i.e. LexisNexis File and Serve;

(b)     attorneys of record in this action, persons employed in the attorneys' office, and independent contractors retained by the attorneys, on a need-to-know basis;

(c)     Plaintiff and Defendants;

(d)     experts consulted or retained by the parties or their lawyers for purposes of this litigation;

(e)     witnesses or potential witnesses with whom counsel of record deem it necessary to discuss such material in the course of discovery and/or preparation for trial.

5.      Confidential material, or data and information obtained, derived or generated from confidential material, shall not be used for any purpose other than pretrial discovery (including depositions), pretrial proceedings, preparation for trial, at trial, and post-trial litigation in connection with the above-captioned action.

6.      Any documents filed of record which contain confidential material shall be placed in a sealed envelope or other sealed container at the time of filing, which envelope or container shall be conspicuously endorsed with the title of this action, the

4

words "Confidential Material - Subject to Protective Order," and a statement substantially in the following form:

> **This envelope is sealed pursuant to order of the Court and contains confidential information filed in this case by [name of party] and is not to be opened or the contents thereof to be displayed or revealed except by order of the Court.**

7.      Nothing contained in this Stipulation and Order of Confidentiality shall be construed as a waiver by the Defendants of the right to object to the subject matter of any discovery request made in this action, or the admissibility into evidence of any document or testimony subject to this Stipulation and Order. The execution of the Stipulation and Order of Confidentiality shall not be construed as an agreement by the Defendants to produce any document or supply any information, and shall not constitute an admission that any designated material is relevant in any way to the issues raise in the pending action or as a waiver of any privilege with respect thereto.

8.      Any dispute arising under this Stipulation and Order of Confidentiality shall be submitted to the Court for resolution. If Plaintiff disagrees with the designation of any material as confidential material, the material so designated shall nonetheless be deemed to be confidential material, and Plaintiff shall be required to file an appropriate motion with the Court. Likewise, nothing contained in this Stipulation and Order of Confidentiality shall be construed as a waiver by the Plaintiff of his right to seek to compel discovery of the Defendants and/or file an appropriate motion with the Court contesting the refusal to produce information and/or documents by the Defendants. A motion may be made at any time, and failure to make a prompt motion shall not be deemed a waiver of the intent to make such motion.

5

9.      Within thirty (30) days after the final termination of this action, whether by settlement, judgment, or decision on appeal, all originals and copies of documents designated as confidential shall be returned to counsel for the Family Court, together with all documents containing data or information derived from or set forth in such confidential material, but this paragraph does not cover or include any pleadings filed by the plaintiff with the Court.

10.     If any confidential material, information or data obtained, derived or generated therefrom, is sought through discovery from Plaintiff by any party in any other judicial or administration proceeding, Plaintiff will immediately notify defense counsel so as to allow the opportunity to seek a protective order from the appropriate court.

11.     The provisions of this Stipulation and Order of Confidentiality shall not apply to any future parties or claims in this lawsuit, unless specifically amended to reflect applicability to such parties or claims.


Fox Rothschild LLP                          Department of Justice
                                            State of Delaware


_____            _____
Sophia Siddiqui, Esquire (I.D. No.          Deputy Attorney General Ralph K.
4914)                                       Durstein, III (I.D. No. 0912)
919 N. Market Street, Suite 1300            Carvel State Office Building
Wilmington, DE 19899-2323                   820 North French Street
(302) 654-7444                              Wilmington, DE 19801
(302) 656-8920 (facsimile)
                                            Date:
- Of Counsel -


_____
Wendy G. Rothstein, Esquire
(Adm. Pro Hac Vice)
1250 South Broad Street

6

P.O. Box 431
Lansdale, PA 19446-0431
(215) 699-6000
(215) 699-0231 (facsimile)

Counsel for Plaintiff

Date:

Cross & Simmon, LLC

_____

Richard H. Cross, Jr.
913 North Market Street
11th Floor
Wilmington, DE 19801

Counsel for Defendants
Date:

APPROVED AND SO ORDERED this _____ of _____, 2007

_____

Hon. Mary Pat Thynge
United States Magistrate

7